## Case No. 6,608.

### The HOLLEN.

[1 Mason, 431.] 1

Circuit Court, D. Massachusetts. Oct. Term, 1818.

JURISDICTION IN ADMIRALTY — CIRCUIT COURTS—DECREES OF CONDEMNATION.

1. The circuit court has no jurisdiction in causes of admiralty and maritime jurisdiction, except over the final decrees of the district court. If such final decree be not appealed from, no appeal lies upon any subsequent proceedings upon the summary judgment rendered on a bond for the appraised value, or upon an admiralty stipulation taken in the cause, to enforce the decree. The proceedings in such cases, and the awarding of execution, are incidents exclusively belonging to the court in possession of the principal cause.

[Distinguished in Westcot v. Bradford, Case No. 17,429. Cited in The Elmira, 16 Fed. 138.]

[Cited in Bartlett v. Spicer, 75 N. Y. 533.]

2. After a final decree of condemnation unappealed from, in a cause of seizure by a collector for a breach of the revenue laws, the secretary of the treasury has no authority to remit the collector's share of the forfeiture. It is a vested and absolute right.

[Cited in U. S. v. Collier, Case No. 14,833; U. S. v. Harris, Id. 15,312.]

1 [Reported by William P. Mason, Esq.]

[Appeal from the district court of the United States for the district of Massachusetts.]

An information upon a seizure, by the collector of Portland, was filed in the district court of Maine, on the 6th day of July, 1813, against the brig Hollen and certain parcels of goods on board, for an alleged importation of the same goods into the United States, contrary to the non-importation acts then in force. The cause was duly entered at the succeeding September term of the court, and was continued from term to term until May term, 1817, upon the application of Mr. Ogden and others, the claimants, to enable them to apply to the secretary of the treasury for a remission of the forfeiture. In the intermediate time, to wit, on the 13th day of June, 1814, the district judge transmitted a statement of facts to the secretary of the treasury. But no remission having been actually obtained, the district court at the said May term, 1817, due proclamation having been made, and no person appearing to claim the brig or the goods, proceeded to decree the same forfeited; and, farther, ordered the appraised value of the property (which had been delivered on bail) to wit, $22361.75 to be paid into the court within twenty days, with the costs of prosecution. This sum not having been paid into court pursuant to the decree, it was, at September term, 1817, decreed by the court, that judgment be rendered on the bond, which had been given for the appraised value by Andrew Ogden, Abraham K. Smedes, and Thomas C. Butler, and that execution issue against them accordingly. Afterwards, to wit, on the 9th day of February, 1818, the secretary of the treasury granted a remission of "all the right, claim, and demand of the United States, and of all others whomsoever to the said forfeiture," upon the payment of the duties, costs, and charges, and of five hundred dollars to be distributed among the custom-house officers, in the proportion prescribed by law. The execution having been returned unsatisfied, an alias execution issued, which was also returned unsatisfied. Messrs. Ogden and others, the parties to the bond, at the February term, 1818, applied by petition to the district court, stating the preceding facts with a profert of the remission, and alleging their willingness to comply with the terms of said remission, and praying, among other things, that the execution heretofore issued in the premises might be superseded, and that execution might thereafter be stayed on the bond and judgment aforesaid. To this petition the district attorney appeared, and, reserving the rights of the collector and other officers of the customs in the premises, made no objection, so far as respected the United States to the prayer of the petition. The collector and surveyor of the customs of Portland also appeared and filed an allegation, stating the condemnation, and denying, that any remission had been made by the secretary of the treasury until after the condemnation; deny-

ing also, that at the time of the condemnation any proceedings were pending before him for a remission;· and alleging, that the proceedings, on which the remission was had, were not transmitted to the secretary of the treasury until after the condemnation. The allegation farther stated, that by the condemnation a moiety of the forfeited property became absolutely vested in them; and no appeal ever having been interposed, the decree of condemnation remained in full force, and the secretary of the treasury had not, by law, any authority whatsoever to remit the said moiety. It further appeared in evidence, that copies of the original papers for a remission were, in fact, transmitted to the secretary of the treasury by the district judge, in June, 1814; and that afterwards, about the latter part of July, 1816, the then secretary of the treasury (Mr. Dallas) returned said proceedings to the district court, among several others, with this memorandum on the wrapper:—"I think the petitioners had better apply to congress. A. J. D. 29th June, 1816." The original proceedings thus returned, remained in the district clerk's office until some time in July or August, 1817, when the attorney of Mr. Ogden applied to him for the copy of Mr. Ogden's petition and statement thereon, and obtained it; but no copy of the original petition and statement, or either of them, was ever, after said proceedings were returned as above stated, transmitted by the district clerk to the secretary of the treasury, or ever directed by the district judge to be transmitted.

The district judge, after a summary hearing upon the petition and defensive allegation, continued the cause for advisement; and at September term, 1818, decreed, that the petitioners should take nothing by their petition, and that they should pay the costs of the application, taxed at $33.18. [Case unreported.] From this decision an appeal was claimed and allowed to the circuit court.

Mr. Prescott, for appellants.
W. P. Preble, for respondents.

STORY, Circuit Justice. If this cause were regularly before this court. I do not perceive, how we could grant the petitioners any relief. The case is not distinguishable, in principle, from that of The Margaretta [Case No. 9,072], and I see not the least reason to change the opinion, which was then expressed. There are some circumstances also in this case, which bear more unfavorably, in point of law, upon the claimants than in that. The principal question is, whether, after a final decree of condemnation, the secretary of the treasury has authority to remit the collector's share in the forfeited goods? I understand the doctrine of the supreme court to be, that the right of the collector to forfeitures in rem attaches on the seizure, and is consummated by the condemnation. Jones v. Shore's Ex'rs, 1

Wheat. [14 U. S.] 462. If this be. true, then, by the condemnation,· it becomes an absolutely vested right; and the secretary of the treasury has no more power to divest this absolute right before, than he has after the forfeited property is distributed. It would be a monstrous proposition to assert, that the secretary of the treasury might, at any time, and even years after the forfeiture was distributed, by his remission, recall the whole property from those, to whom the law had absolutely given it. Such a doctrine might, perhaps, well suit the character of an arbitrary despotism; but in a government, like ours, it could not be established, but upon the ruins of all the principles, which regulate civil rights. The notion, that the receipt or non-receipt of the money under the decree of condemnation could make any difference in the collector's right, has been expressly repudiated by the supreme court.

But it is unnecessary to entertain these questions, for I am very clear, that this court has no jurisdiction upon this appeal. The judicial act of 1789, c. 20, § 21 [1 Stat. 83]. enacts, that "from all final decrees in a district court, in causes of admiralty and maritime jurisdiction, where the matter in dispute exceeds the sum or value of three hundred dollars (now altered to fifty dollars) exclusive of costs, an appeal shall be allowed to the next circuit court to be held in such district; provided, nevertheless, that all such appeals from final decrees as aforesaid, from the district court of Maine. shall be made to the circuit court next to be holden after each appeal in the district court of Massachusetts." The final decree of condemnation, in this case. was rendered at the May term of the. district court of 1817, and for want of a claim; and no appeal was made, or indeed could under such circumstances be made to the next circuit court. That decree, then, is not subject to our revision. The subsequent proceedings upon the bond for the appraised value. and the issuing of the execution, were but incidents to the original cause to enforce the decree of condemnation. And it has been long since settled, that this court has no jurisdiction over the proceedings on the bond. which is· but an admiralty stipulation, unless it has possession of the cause, to which it belongs. McLellan v. U. S. [Case No. 8,895].

But even if an appeal would lie upon the summary judgment on the bond, when no appeal had been interposed from the decree of condemnation (which, in point of law, cannot be admitted); yet this would not help the present case; for the judgment was rendered at September term, 1817, and no appeal was then taken to the next, which was the only circuit court, which could take cognizance of such an appeal. Then, as to the present petition. it is but an application to the discretion of the court to stay execution, and we have no legal right to control the exercise of that discretion. Was it ever

heard of in a court of admiralty, that it was a matter of appeal, that the court refused to stay its own process to enforce its own decrees? We have by law no control, except over the final decrees of the district court, as to acquittal or condemnation. It has the sole power over its own process to execute its own decrees; and it would be a strange anomaly in our law, if one court had rightfully the sole possession of the cause, and another court, having no authority to inquire into the merits of the cause, could arrest the process, by which it was to be enforced. Nor is there any more inconvenience in this case than in every other, where a court, having final jurisdiction, awards process to enforce its own judgment. It may always happen, that a possible injustice may arise; but the true remedy is in an application to the court, which has control over the process. I confess, that I do not perceive, how the district court could have properly acted otherwise, than it has. That, however, is no concern of ours. For the defect of jurisdiction, let the appeal be dismissed.

Appeal dismissed.