## THE ELMIRA.

*(Circuit Court, E. D. Michigan. December 4, 1882.)*

**JURISDICTION OF CIRCUIT COURT—APPEAL IN ADMIRALTY—FINAL ORDER.**

Where a final decree is rendered against the claimant of a vessel and his sureties, on a stipulation, and executions are issued and levied on the real estate of one of the stipulators, who claims to have been incapable, by reason of her coverture, of executing a valid stipulation, an order by the district court denying her motion, praying that the executions under which the marshal was proceeding to sell her property be quashed, set aside, and satisfied, and all proceedings therein be stayed, is not a final order, and no appeal will lie therefrom to the circuit court.

In Admiralty. In the matter of the appeal of Sophia Kaichen.

*Luther Beckwith* and *George V. N. Lothrop*, for libelant.

*Henry H. Swan*, for appellant.

MATTHEWS, Justice. A libel was filed against the propeller Elmira, and William Kelley, the managing owner, in an admiralty cause, and the vessel, having been seized under process, was delivered to Kelly, who appeared as claimant, on filing a stipulation with six sureties to abide the decree in the cause. This stipulation, dated May 8, 1876, was signed by Sophia Kaichen, as one of the sureties. The stipulation is in the usual form, and recites that the sureties named therein, "submitting themselves to the jurisdiction of the court in the premises, * * * hereby consent that execution may issue," etc., in default of Kelley's abiding the decree of the court. A final decree was subsequently rendered for over $8,000 against the claimant, Kelley, and the six sureties on the stipulation, September 24, 1877. Execution was issued on the decree October 26, 1877, and levied on real estate, the property of Sophia Kaichen, which, in August, 1881, was advertised for sale. In the mean time certain of the sureties in the stipulation, other than Sophia Kaichen, having paid the amount due on the decree to the libelant, are prosecuting the execution in his name for their benefit, and claim the right to enforce the collection against her in their favor of the whole amount thereof. In September, 1881, Sophia Kaichen filed in the district court her motion, praying that the executions, under which the marshal was proceed-

ing to sell her property, be quashed, set aside, and satisfied, and all proceedings therein be stayed. Several reasons are assigned for the motion, the one relied on being that, at the time she signed the stipulation on which the judgment was rendered against her, she was, and still is, a married woman, and, as such, incapable by law of entering into such obligation. The fact of her coverture is admitted, and it will be assumed that, by the laws of Michigan,—the place of her domicile,—she is under the disability alleged, although it is claimed against her that she was the registered and actual part owner, at the time, of the propeller Elmira, and capable in law of contracting in reference to it as her separate property. This motion was finally denied November 7, 1881, and an order to that effect entered of record, from which an appeal was prayed and allowed to the circuit court. This appeal came on to be heard, first, upon a motion to dismiss for want of jurisdiction. The appellate jurisdiction is defined in section 631, Rev. St., as follows:

"From all final decrees of a district court, in causes of equity or admiralty and maritime jurisdiction, except prize causes, when the matter in dispute exceeds the sum or value of $50, exclusive of costs, an appeal shall be allowed to the circuit court next to be held in such district, and said circuit court is required to receive, hear, and determine such appeal."

Section 636, Rev. St., also provides that—

"A circuit court may affirm, modify, or reverse any judgment, decree, or order of a district court brought before it for review, or may direct such judgment, decree, or order to be rendered, or such further proceedings to be had, by the district court, as the justice of the cause may require."

The point of the contention upon the present motion is, whether the order of the district court denying to the appellant the relief prayed for in her motion for a perpetual stay of execution and to set aside the levy on her property, is a final decree, in the sense of the statute, from which an appeal lies.

It is maintained by counsel for the appellant that the order in question comes within the definition of a final decree, as stated by the supreme court in *Thomson* v. *Dean*, 7 Wall. 346:

"When the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or *directs it to be sold*, or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal to this court."

But in the present case the decree which directed the defendant to pay a certain sum of money to the libelant, and which the latter was

entitled to carry into immediate execution, was that final decree rendered in the cause, and which terminated the litigation, which fixed the rights of the parties, and from which no appeal was prosecuted within the time allowed by law, and from which, therefore, no appeal now lies. It is not the district court which now, by denying the appellant the relief sought by her motion, directs her property to be sold. That is the command of the execution, and the execution is directed to issue, by the statute; it is, indeed, the process of the court and under its control, exercising a discretion under the law; but the sale of property levied on is not a judicial act, as would be that of property specifically ordered by a decree to be sold, as in equity, in case of sales on foreclosure, or in admiralty, in case of property seized and attached, as the ground of jurisdiction.

Counsel for the appellant, however, claims, upon the authority of *Amis* v. *Smith*, 16 Pet. 303; *McCargo* v. *Chapman*, 20 How. 555; *Boyle* v. *Zacharie*, 6 Pet. 656; and *U. S.* v. *McLemore*, 4 How. 286, that the appropriate mode for seeking relief against illegality in final process is by motion in the court where the judgment remains, which is, no doubt, correct; and, admitting that the cases cited also decide that such motions are addressed to the discretion of the court, and hence its decision upon them cannot be reviewed in an appellate court, claims that in that particular they are overruled by subsequent decisions of the supreme court; and to that effect, it is said, are the cases of *Ex parte Flippin*, 94 U. S. 350, and *Ex parte Perry*, 102 U. S. 183.

In *Boyle* v. *Zacharie*, 6 Pet. 648, 657, the question was whether a writ of error would lie to a circuit court of the United States to revise its decision in refusing to grant a writ of *venditioni exponas*, issued on a judgment obtained in that court. Mr. Justice STORY, delivering the opinion of the court, admitted that a writ of error would lie where there was an erroneous award of execution, not warranted by the judgment, or erroneous proceedings under the execution, nevertheless said, (p. 257:)

"We consider all motions of this sort, to quash executions, as addressed to the sound discretion of the court; and as a summary relief, which the court is not compellable to allow, the party is deprived of no right by the refusal; and he is at full liberty to redress his grievance by writ of error, or *audita querela*, or other remedy known to the common law. The refusal to quash is not, in the sense of the common law, a judgment; much less is it a final judgment, even at the common law. Error only lies from a final judgment; and by the express provisions of the judiciary act of 1789, (chapter 20, § 22,) a writ of error lies to this court only in cases of final judgments."

In *McCargo* v. *Chapman*, 20 How. 555, Mr. Justice McLean, delivering the opinion of the court, referred to the cases of *Toland* v. *Sprague*, 12 Pet. 300; *Boyle* v. *Zacharie*, 6 Pet. 648; *Mounts* v. *Hodgson*, 4 Cranch, 324; *Early* v. *Rogers*, 16 How. 599; and *Brooks* v. *Hunt*, 17 Johns. 484, and said:

"Whatever discrepancies may be found in decisions on this subject, we think a writ of error will not lie on any judgment under the act of 1789, which is not final, in whatever form it shall be given. This may be illustrated by the case before us. In this case the circuit court quashed the execution; and by a writ of error we are called upon to revise that decision. What will be the effect of an affirmance? May not the circuit court issue another execution on the same judgment? In short, is the action of the circuit court final as to anything except the particular motion before it? May it not be followed by another motion of the same import? If the writ of error may be allowed to one party, it cannot be denied to the other. And to what motions shall it be limited?

The learned justice also said:

"If, in the language of this court, in *Boyle* v. *Zacharie*, an execution should be issued, not authorized by the judgment, the court, on motion, would set it aside or quash it; *and, should it refuse to do so, a mandamus would seem to be the proper remedy.* It is a writ which may be issued to inferior courts and magistrates to require them to execute that justice which the party is entitled to, and which, by law, they are enjoined to do, and where there is no other remedy."

The learned justice, it would seem, misapprehended what was said by Mr. Justice Story, in *Boyle* v. *Zacharie, supra,* because the latter, in his opinion in that case, expressly admitted that a writ of error would lie where "there is an erroneous award of execution not warranted by the judgment, or erroneous proceedings under the execution." 6 Pet. 656. And what was added in *McCargo* v. *Chapman, supra,* in reference to a *mandamus* when the court refused, in such a case, on motion, to set it aside or quash it, was *obiter dictum;* and this is evidently what the chief justice referred to in *Ex parte Flippin,* 94 U. S. 348, where he said: "If there is anything in the case of *McCargo* v. *Chapman,* 20 How. 555, to the contrary of this, it is disapproved." In the case of *Ex parte Flippin, supra,* it was claimed that the circuit court had issued a peremptory writ of *mandamus* not authorized by the judgment, and an application was made to the supreme court for a *mandamus* to the circuit court, requiring it to quash its own writ. The chief justice, in delivering the opinion of the court, said:

"But if the court has jurisdiction to issue process, it has, necessarily, jurisdiction to decide, as to its appropriate form. Here the process has been is-

sued; and the court, upon motion, has decided that it was good in form, and ought not to be quashed. Of this decision the petitioners complain, and seek to have it reversed. This we cannot do by *mandamus*. Under that form of proceeding we may compel an inferior court to decide upon a matter within its jurisdiction, and pending before it for judicial determination, but we cannot control its decision; neither can we, in that way, compel the inferior court to reverse a decision which it has made in the exercise of its legitimate jurisdiction. *That is the office of a writ of error or an appeal in cases to which such proceeding applies,* but not of a writ of *mandamus.* If there is anything in the case of *McCargo* v. *Chapman,* 20 How. 555, to the contrary of this, it is disapproved."

The last remark was manifestly in reply to counsel, who, in argument, had cited and relied on the *dictum* in *McCargo* v. *Chapman,* which has already been quoted in this opinion. It is plain that in *Ex parte Flippin, supra,* it was not the intention of the chief justice to decide that a writ of error or an appeal was or was not an appropriate proceeding in that case, although it is an instance of the very kind put by Mr. Justice STORY in *Boyle* v. *Zacharie, supra,* in which a writ of error would lie; much less was it any purpose of the decision in *Ex parte Flippin* to decide in what other cases such proceedings by writ of error or appeal might be had. The chief justice, on the contrary, was careful to limit the office of a writ of error or appeal to "cases in which such proceeding applies." In what cases it applied it was not intended to decide. This case cannot be considered as overruling the doctrine of *Boyle* v. *Zacharie* and repeated in the other cases mentioned. To the same effect are *Ex parte Loring,* 94 U. S. 418, and *Ex parte Perry,* 102 U. S. 183.

Counsel also refer to the case of *The Gran Para,* 10 Wheat. 497. In that case a decree of the district court in admiralty, ordering the restitution to the libelant of specific property as illegally captured, had been affirmed in the circuit court and the supreme court on appeal. 7 Wheat. 471. The mandate of the latter court was sent down, and the libelant prayed that an execution might issue against one Daniels, to whom the property had been delivered, on a stipulation signed by others, he not being a party either to the stipulation or to the cause, otherwise, which the circuit court refused. An appeal from this order of the circuit court was prosecuted by the libelant to the supreme court. The appeal seems to have been entertained, the court affirming the order appealed from, deciding that the proper course was to issue a monition to bring Daniels before the court, and not an execution; but no question of jurisdiction seems to have been raised or mentioned, either by counsel or the court.

The opinion in the case was pronounced by Mr. Justice STORY on March 1, 1825. The same learned justice had previously, in 1818, on circuit, decided the case of *The Hollen*, 1 Mason, 431, in which he held that if the final decree upon the merits in an admiralty cause be not appealed from no appeal lies upon any subsequent proceedings upon the summary judgment rendered on a bond for the appraised value, or upon an admiralty stipulation taken in the cause to enforce the decree, as the proceedings in such cases and the awarding of execution are incidents exclusively belonging to the court in possession of the principal cause. He then said (p. 436 :)

"As to the present petition, it is but an application to the discretion of the court to stay execution, and we have no legal right to control the exercise of that discretion. Was it ever heard of in a court of admiralty, that it was a matter of appeal that the court refused to stay its own process to enforce its own decrees. We have by law no control except over the final decrees of the district court, as to acquittal or condemnation. It has the sole power over its own process to execute its own decrees."

No light is thrown upon the matter here in question by the decision in *Harris* v. *Hardeman*, 14 How. 334, for that was a writ of error to an order setting aside a judgment by default, on the ground that it was void for want of jurisdiction over the person of the defendant, who, it appeared, had not been served with process; and, of course, the forthcoming bond and all matters in execution of the judgment fell with it. What was said by Mr. Justice DANIEL, that the cause being still *in fieri*, gave to the court power to correct irregularities in the judgment, on a motion, as a substitute for a writ of error *coram nobis* and *audita querela*, does not touch the point whether, if the court had refused to set aside the execution, upon a judgment not void on its face, that refusal could be assigned as an error of law in an appellate court.

*Humphreys* v. *Leggett*, 9 How. 297, is an authority to the point that a bill in equity will lie in favor of a defendant in a judgment, to restrain its execution, where he has a defense which has arisen since its rendition, and which he could not otherwise make available, either by motion to the court, in which the judgment remains, or by *audita querela*, as well as where he had an original defense, of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself. *Truly* v. *Wanzer*, 5 How. 142.

In *Pickett's Heirs* v. *Legerwood*, 7 Pet. 144, it was decided that a writ of error would not lie to reverse the order of the circuit court

amending a judgment and quashing a writ of possession upon a writ of error *coram nobis*. It was there said that the appropriate use of the latter writ was to enable a court to correct its own errors, committed prior to the rendition of judgment, which, in practice, had been superseded by motion, sustained, if the case require it, by affidavits; that it was applicable to "error in the process, or through default of the clerk; error in fact, as when the defendant, being under age, sued by attorney in any other action but ejectment; that either plaintiff or defendant was a married woman at the commencement of the suit; or died before verdict or interlocutory judgment and the like;" but "that it is not one of those remedies over which the supervising power of this court is given by law." It was held that the case was within that of *Walden* v. *Craig*, 9 Wheat. 576, which was that of a motion for a similar object, denied by the circuit court, and which the supreme court said ought to have prevailed; adding, however: "but the course of this court has not been in favor of the idea that a a writ of error will lie to the opinion of a circuit court granting or refusing a motion like this. No judgment in the cause is brought up by the writ, but merely a decision on a collateral motion, which may be renewed." See, also, *Bronson* v. *Schulten*, 104 U. S. 410, and *U. S.* v. *Frerichs*, 1 Sup. Ct. Rep. 169, decided by the supreme court at the October term, 1882, in which are cited, in addition to authorities already noticed, the cases of *Morsell* v. *Hall*, 13 How. 212; *Smith's Lessee* v. *Trabue's Heirs*, 9 Pet. 4; *Evans* v. *Gee*, 14 Pet. 1; *Gregg* v. *Forsyth*, 2 Wall. 56; *Barton* v. *Forsyth*, 5 Wall. 190.

In reference to the case of *Pickett's Heirs* v. *Legerwood, supra,* upon the point that a writ of error will not lie to review the decision of an inferior court upon a writ of error *coram nobis*, it should, perhaps, be observed that it is to be taken as meaning cases in which the decision of the court sought to be reviewed is predicated upon the matter of fact, alleged as the ground of error; for as was pointed out by Lord Chief Baron POLLOCK in *Irwin* v. *Grey*, L. R. 1 C. P. 171: "If the error assigned below was that an infant had appeared by attorney, which would be error in fact, and the court below decided that it was not error, that which was error in fact in the court below would, by that erroneous decision, become error in law, because the record would be wrong." This distinction was confirmed in the house of lords in the same case, on error, by the lord chancellor and also by Lord CRANWORTH, who said: "If the court in which the cause originated decided wrongly upon an error in fact, so that the decision was erroneous in point of law, and so appeared on the record, it might be brought

before a court of error, but not otherwise." L. R. 2 Eng. & Ir. App. Cas. 20.

This leads immediately to the further remark that, even if the present appeal could be entertained, it would be altogether nugatory, for it does not reach the error alleged and complained of. That error, it will be observed, does not consist of any violation of law in any proceeding subsequent to the final decree against the stipulation. As long as that decree stands unreversed and unsatisfied the parties will be entitled to have it executed, and in the execution and levy there has been nothing erroneous in law. The error sought now to be reached inheres in the judgment itself, having been rendered, as is alleged, against a woman, under the disability of coverture, so that if, under other circumstances, for error in the process, or otherwise, occurring in matters subsequent to the decree of condemnation, an appeal might be taken, it would not open that decree for re-examination; for as it is itself final for purposes of appeal, it is conclusive until and unless an appeal from it is prosecuted within the time limited by law. Whether now, after that time has elapsed, any mode remains for reaching the error which it is alleged lurks in it, either by a bill in equity or by a motion in the district court, according to the analogy of a writ of error *coram nobis*, to set aside the judgment itself, or otherwise, are questions which do not arise upon the present state of the record, and upon which no opinion is expressed.

It is sufficient to say that upon the authorities referred to, it seems to me, after much consideration, that the present appeal must be dismissed for want of jurisdiction: and it is so ordered.