# Bean *versus* Howe *et al.*

A railroad company in constructing their road appropriated a portion of the bed of a public road, removing a bridge which crossed a stream at the point taken. Upon the failure of the company to rebuild the bridge the road commissioners let the work to a contractor, who commenced the erection of a new bridge, which when nearly completed was torn up by the employees of the company and the contractor driven from the work. There was evidence that the superintendent of the railroad had assented to the location of the new bridge, which he denied. The contractor brought an action of trespass, and the court instructed the jury to find for defendants, on the ground that the contractor had no authority under the contract from the road commissioners to enter on defendant's premises and construct the bridge. *Held,* reversing the court below, that it was for the jury to decide what was the extent of the authority and agreement of the superintendent, and if such authority and agreement were proved the plaintiff could recover.

October 15, 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

[Bean v. Howe.]

Error to the Court of Common Pleas of *Forest county:* Of October and November Term 1877. No. 243.

Trespass *vi et armis* by Abraham Bean against William Howe and others. Plea "not guilty." The facts are stated in the opinion of this court.

*S. T. Neill* and *M. J. Heywang,* for plaintiff in error.—Upon the failure of the railroad company to rebuild the bridge, it was the duty of the road commissioners to rebuild the same, and they had the right to do so? Act of 19th February, 1849, Purd. Dig. 1221 ; Pennsylvania Railroad Company *v.* Duquesne Borough, 10 Wright 224 ; Newlin Township *v.* Davis, 27 P. F. Smith 317 : Phoenixville *v.* Phoenix Iron Company, 9 Wright 135. There was certainly evidence of the assent of the railroad company to the location, and the facts relating thereto should have been submitted to the jury. Bevan *v.* Ins. Co., 9 W. & S. 187 ; Wenrich *v.* Heffner, 2 Wright 207.

There was no paper book nor argument for defendants in error.

Mr. Justice WOODWARD delivered the opinion of the court, January 7th 1878.

Throughout the transactions that gave rise to this litigation, and in the trial of the cause, a strange misconception seems to have prevailed in relation to the nature and extent of corporate privileges and corporate obligations. In the years 1866 and 1867, the Warren and Franklin Railroad Company built their railroad along the Allegheny river, through the township of Harmony, in the county of Forest. In doing this the bed of a public road which had been in use for a number of years, was appropriated to the extent of some sixty perches, including a point where it crossed a stream known as Jones's run, the bridge over which was torn away. Another public road extended from this bridge into the open country back from the river, along the upper bank of the run. A short distance below the bridge, the White Oaks station of the company was erected. When this controversy began nothing had been done towards replacing the road that had been occupied or the bridge that had been destroyed. In the interval, after consolidation with another corporation, this company had become merged in the Oil Creek and Allegheny Valley Railroad Company.

On the trial it was alleged on behalf of the plaintiff that in June 1870, the road commissioners of the township of Harmony met Mr. Hepburn, the superintendent of the railroad company by appointment, at the station, which by this time had acquired the name of Trunkeyville. A new station-house was then being erected on the lower bank of Jones's run, and the plaintiff's evidence tended to show that the superintendent entered into an agreement that the company should build a public road on the upper side of

[Bean v. Howe.]

their track, to pass along the rear end of the station-house, and across Jones's run to the road leading into the country along its upper bank.  The same evidence was relied on to prove an agreement made at the same time, that the company should put up a new bridge over the run in place of that which had been taken down.  It was asserted by the plaintiff that this work was agreed to be done within three weeks.  No steps having been taken within the allotted time to carry the alleged agreement into effect, the road commissioners entered into a contract with the plaintiff for building the bridge at the point selected.  He began the work and prosecuted it until it was nearly finished, when the defendants, who were in the service of the railroad company, forced him to abandon it, and destroyed the bridge.  For this trespass this suit was brought.  As the bridge had been erected within the limits of the company's right of way, the court below held that the defendants, having acted under the corporate authority, were not trespassers, and that the plaintiff could not recover.

Whether the performance of the duty the law has laid on the railroad company can be enforced as the result of the proceedings in this action or not, must depend upon the opinion a jury may form hereafter on controverted facts.  At some time, in some proceeding, the law will compel that performance, for there can be no doubt of the existence of the duty itself.  By the 13th section of the Act of the 19th of February 1849, it is required that a railroad company, finding " it necessary to change the site of any portion of any turnpike or public road, shall cause the same to be reconstructed forthwith, at their own proper expense, on the most favorable location, and in as perfect a manner as the original road."  For present purposes, it is to be assumed that the corporate authorities whose franchises have become vested in the Oil Creek and Allegheny Valley Railroad Company, appropriated the bed of this highway as a part of their right of way, and took possession of and destroyed the bridge over Jones's run.  The doctrines deducible from the cases of Phœnixville v. The Phœnix Iron Company, 9 Wright 135; The Pennsylvania Railroad Co. v. Duquesne Borough, 10 Wright 223 ; The Township of Newlin v. Davis, 27 P. F. Smith 317, and The Pennsylvania Railroad Company v. The Borough of Irwin, reported *postea*, p. 336, would have justified the road commissioners, after notice to the company, in taking any proper steps to replace the road and bridge, and would have entitled them to recover from the company the expense incurred.  They have attempted to reach the end in view in another way, and it remains to be ascertained whether the attempt shall be successful.

In the first point presented to the court on behalf of the plaintiff, they were asked to say " that if the railroad company obstructed the public highway by appropriating the road-bed and bridge for their track, it was their duty under the Act of Assembly to open and construct forthwith another road and bridge in a convenient

[Bean v. Howe.]

location, and if the company failed or neglected to do so after notice and the lapse of a reasonable time, the road commissioners of the proper township had the same right and power that the company had to appropriate other ground conveniently adjacent for a road and bridge, and it was their duty to do so." It is not necessary to discuss the question whether the abstract legal principle embodied in this point was or was not accurately stated. It was the duty of the court to answer it, in view of the peculiar facts which the trial had developed. It was an admitted element in the cause that the bridge the plaintiff was building was within the lines of the land the company had appropriated under their charter for their right of way. Their statutory duty was to reconstruct the public road elsewhere, and under no circumstances could the road commissioners enter upon the land set apart for the purposes of the railroad track without the company's express consent. An affirmative answer to the point would have been unwarranted under the facts disclosed.

Apart, however, from the rights and duties of the parties under the statute and the legal rules which have been settled in its construction, the claim was made for the plaintiff that he was protected by the agreement alleged to have been made between the road commissioners and the company's superintendent. His counsel asked the court, in his second point, to charge, " that if the jury believe, from the evidence, that on the 22d of June 1870, the superintendent of the railroad company met the road commissioners on the ground, to arrange about supplying a new road and bridge in place of the one obstructed, and jointly selected and agreed upon a site for such new road and bridge, and the superintendent then agreed, in behalf of the company, to build the bridge in the location so selected, but the company failed to do so within a reasonable time thereafter, and the road commissioners then went on, advertised for proposals to construct the bridge, and afterwards let the contract therefor to the plaintiff, who proceeded to erect a bridge on said location, in pursuance of said contract, the plaintiff had a right to construct said bridge ; and if it was destroyed by the defendants before the same was accepted by the road commissioners and taken off plaintiff's hands, the defendants were trespassers, and the plaintiff is entitled to recover." The prayer for instruction was unqualified, and assumed the power of the superintendent to bind the company. The fact was disputed, for he had sworn he possessed no such power, and the question was one for the jury to decide. If the point, therefore, had been simply refused, it would be difficult to find error in the ruling. But the court did more than that. They charged that, " under the evidence in this case, there was no legal authority in plaintiff, acting under the contract from the road commissioners of Harmony township, to enter on the premises in question and construct the bridge, and hence defendants, acting under the direction of the railroad company, were not trespassers in removing the

[Bean v. Howe.]

same." This instruction was a summary disposition of the whole controversy, irrespective entirely of the alleged agreement, and in disregard of all the evidence that had been submitted. It may or may not be that the authority of the superintendent to bind the company would have been found by the jury. The road had been completed for three years, and was in operation under the superintendent's general management. Contracts of this character are usually within the scope of the powers of a railroad · official of Mr. Hepburn's grade, after the functions of the staff of engineers have ceased, and the work of construction has been closed. Whether or not there was direct affirmative evidence of authority, is a question that was not raised on the trial, and one which the record furnishes this court with no material to answer. The superintendent's own testimony was, of course, not conclusive. The fact could only have been settled by a verdict, and no opportunity was afforded for that, for the cause was determined by the peremptory ruling of the court. It has been said already that an inquiry into the right of township officers to exercise the general powers of railroad companies in the reconstruction of highways where there has been corporate neglect, would not now be justified. The proviso to the 13th section of the Act of the 19th of February 1849, directs the ascertainment and payment of damages incurred in changing the location of any road, in the same manner as that provided for the location and construction of the company's own railroad. Grave reasons would stand in the way of the assertion, by municipal authorities, of the company's right of eminent domain. But there is no room for the introduction of that question here. If an agreement was duly made, the line of the highway and the site of the bridge were dedicated to the public, and became subject to the control of the public officers. The statute had defined the corporate duty to reconstruct the road they had appropriated. The agreement defined its location. It ceased to be exclusive corporate property thenceforth. The company were bound to complete it by erecting the bridge on the site selected. Failing to do so, the public interest required the road commissioners to do the work, on the precise principle that made the municipality liable for a failure to complete a bridge which the railroad company had left unfinished, in The Township of Newlin v. Davis, and that enabled the municipality to recover in The Pennsylvania Railroad Company v. Borough of Irwin, *post*, p. 336, the cost of a bridge which it was the duty of the company to rebuild. The jury should have been instructed that if Mr. Hepburn was the authorized agent of the company, and such an agreement as that set up by the plaintiff was entered into, the action of the road commissioners in making the contract for the bridge, was fully justified, and the plaintiff had a lawful possession of the premises which it was a trespass on the part of the defendants to disturb.

Judgment reversed, and *venire facias de novo* awarded.