### STROHEIM et al. v. DEIMEL et al.

(Circuit Court of Appeals, Seventh Circuit. January 9, 1897.)

#### No. 328.

1. APPEAL—FINAL JUDGMENTS—ORDER OF DISCHARGE FROM IMPRISONMENT.
   An order of the circuit court discharging from imprisonment a defendant held under execution against his person upon a judgment in a civil action is final, and appealable to the circuit court of appeals.

2. IMPRISONMENT FOR DEBT—ORDER OF DISCHARGE.
   The Illinois statute concerning discharge from imprisonment for debt (Rev. St. c. 72), providing, by section 34, as amended by the act of June 14, 1887, that no person shall be discharged under the act who neglects or refuses to schedule his property as thereby required, applies to defendants imprisoned under executions upon judgments for torts, as well as upon judgments for debt; and a defendant imprisoned in an action for a tort is not entitled to his discharge without making the schedule required by the act.

3. SAME—PAYMENT OF BOARD.
   It is a sufficient compliance with a statute providing that unless the creditor of a defendant imprisoned for debt shall, at the commencement of each week, pay in advance to the jailer the debtor's board for such week, the defendant may be discharged, for the creditor to pay the debtor's board in advance for several weeks, in one payment, and he need not make a separate payment for each week. Per Bunn, District Judge.

4. SAME—STATE LAWS—FEDERAL PRISONERS.
   State laws relative to the discharge of persons imprisoned upon final process in civil suits do not apply to persons committed on executions from federal courts, unless such laws have been first adopted by act of congress, or by rule of court, made under authority of law; and Rev. St. § 990, does not so adopt state laws as applicable to judgments of the federal courts in actions for torts. Per Bunn, District Judge.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

In the Revised Statutes of Illinois (Starr & C. Ann. St.) are found the following provisions:

Chapter 72, concerning insolvent debtors, approved April 10, 1872, in force July 1, 1872:

"Sec. 2. When any person is arrested or imprisoned upon any process issued for the purpose of holding such person to bail upon any indebtedness or for any civil action when malice is not the gist of the action, or when any debtor is surrendered or committed to custody by his bail in any such action, or is arrested or imprisoned upon execution in any such action, such person may be released from such arrest or imprisonment upon complying with the provision of this act."

"Sec. 30. In all cases where any person is committed to the jail of any county upon any writ (of) capias ad respondendum or capias ad satisfaciendum issued in any suit, it shall be the duty of the creditor in such writ to pay the keeper of the jail or sheriff his fees for receiving such person, and his board for one week at the time the debtor is committed to jail and before the jailer shall be bound to receive the debtor, and in default of such payment, the debtor may be discharged: provided, the officer having such debtor in charge shall give reasonable notice to the creditor or his agent or attorney, if within the county, that such debtor is about to be committed to jail on such writ.

"Sec. 31. Should the debtor be detained in jail under such writ for more than one week, it shall be the duty of the creditor, at the commencement of each week, to advance to such jailer the board of the debtor for the succeeding week, and in default of such payment in advance, the debtor may be discharged by such jailer. In case the debtor shall not be detained in such jail for any week for which his board may have been paid in advance, the jailer shall return to the creditor, or his agent or attorney, the amount so advanced for and unexhausted in boarding."

"Sec. 34. In any case where the defendant arrested upon final process shall not be entitled to relief under the provisions of this act, if the plaintiff will advance the jail fees and board in manner hereinbefore provided, the defendant may be imprisoned at $1.50 per day until the judgment shall be satisfied and the officer making the arrest shall endorse the execution 'satisfied in full by imprisonment'; provided, that no person heretofore or hereafter imprisoned under the provisions of this act shall be imprisoned for a longer period than six months from the date of arrest, and all persons imprisoned under the provisions of this act for the period of six months or more at the time this act takes effect, shall thereupon be immediately discharged; provided, however, that no person shall be released from imprisonment under this act who neglects or refuses to schedule in manner and form as provided by this act."

The provisos in this section were added by amendment on June 14, 1887 (Laws 1887, p. 194).

Chapter 77, concerning judgments, decrees, and executions, approved March 22, 1872, in force July 1, 1872:

"Sec. 5. No execution shall issue against the body of the defendant except when the judgment shall have been obtained for a tort committed by such defendant or unless the defendant shall have been held to bail upon a writ of capias ad satisfaciendum (respondendum) as provided by law, or he shall refuse to deliver up his estate for the benefit of his creditors."

"Sec. 62. If, upon the return of an execution unsatisfied, in whole or in part, the judgment creditor, or his agent or attorney, shall make an affidavit stating that demand has been made upon the debtor for the surrender of his estate, goods, chattels, lands and tenements, for the satisfaction of such execution, and that he verily believes such debtor has estate, goods, chattels, lands or tenements, not exempt from execution, which he unjustly refuses to surrender, or that since the debt was contracted, or the cause of action accrued, the debtor has fraudulently conveyed, concealed or otherwise disposed of some part of his estate, with a design to secure the same to his own use, or defraud his creditors; and also setting forth upon his knowledge, information and belief, in either case, the facts tending to show that such belief is well founded, and shall procure the order of the judge of the court from which the execution issued, or of any judge

or master in chancery in the same county, certifying that probable cause is shown in such affidavit to authorize the issuing of an execution against the body of the debtor, and ordering that such writ be issued; upon the filing of such affidavit and order with the clerk, he shall issue an execution against the body of such judgment debtor."

"Sec. 65. When a debtor shall be arrested by virtue of an execution against his body he shall be conveyed to the county jail of the officer who made the arrest and kept in safe custody until he shall satisfy the execution or be discharged according to law. Immediately upon the arrest of the defendant the officer making the same shall give notice thereof to the plaintiff, his agent or attorney, if in the county: provided, that no person heretofore or hereafter imprisoned under the provisions of this act shall be imprisoned for a longer period than six months from the date of arrest, and all persons imprisoned under the provisions of this act for the period of one or more years from the time this act takes effect shall thereupon be immediately discharged: provided, however, that no person shall be released from imprisonment under this act who neglects or refuses to schedule in manner and form as provided by an act concerning insolvent debtors, approved April 10, 1872: in force July 1, 1872."

The provisos in this section were added by amendment on June 17, 1887 (Laws 1887, p. 213).

T. A. Moran, Adolf Kraus, and Levy Mayer, for plaintiffs in error.

Hiram T. Gilbert, for defendants in error.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The circuit court, on an informal oral motion (73 Fed. 430), ordered the discharge of Rudolph Deimel from imprisonment in a county jail in Illinois, where he was held by virtue of a writ of capias ad satisfaciendum issued upon the judgment in the case of Stroheim v. Deimel, reviewed and affirmed by this court, as reported in U. S. v. Arnold, 34 U. S. App. 177, 16 C. C. A. 575, and 69 Fed. 987, and in Deimel v. Stroheim, Id. The discharge was ordered under sections 30 and 31 of chapter 72 of the Revised Statutes of Illinois, and section 990 of the federal Revised Statutes, because the creditor had not, as required by the statute of the state, paid to the jailer in advance, "at the commencement of each week," "the board of the debtor for the succeeding week," it being provided that, "in default of such payment in advance, the debtor may be discharged by such jailer." Before the present case was argued upon the merits, a motion was made to dismiss the writ of error, on the ground that the order of discharge was not a final decision which, under section 6 of the act creating the circuit court of appeals (Act March 3, 1891), "jurisdiction to review by appeal or writ of error" was conferred. In support of the motion were cited Wells v. McGregor, 13 Wall. 188; Harrington v. Holler, 111 U. S. 796, 4 Sup. Ct. 697; Boyle v. Zacharie, 6 Pet. 648; Pickett's Heirs v. Legerwood, 7 Pet. 144; Smith v. Trabue's Heirs, 9 Pet. 4; Connor v. Peugh's Lessee, 18 How. 394; McCargo v. Chapman, 20 How. 555; Callan v. May, 2 Black, 542; Barten v. Forsyth, 5 Wall. 190. Per contra were cited: 3 Enc. Prac. & Pl. 124, 125; Newhart v. Wolfe, 102 Pa. St. 561; Harper v. Kean, 11 Serg. & R. 280, 298; Gleason v. Peck, 12 Vt. 56; Avery v. U. S.,

12 Wall. 304; Hunt v. Brooks, 18 Johns. 4; Smock v. Dade, 5 Rand. (Va.) 639, 644; Steele v. Boyd, 6 Leigh, 547; McMillan v. Baker, 20 Kan. 50; Ironworks Co. v. Tappan, 56 Miss. 659; Dunlap v. Clements, 18 Ala. 778; Chambers v. Neal, 13 B. Mon. 256; Marsh v. Haywood, 6 Humph. 210; McDonald v. Falvey, 18 Wis. 571; Lench v. Pargiter, 1 Doug. 68. The motion to dismiss was denied.

If the proceedings in the circuit court had been by audita querela, in accordance, it would seem, with the better practice, the right to a writ of error would have been beyond question. As made upon motion, the order of discharge was no less final in its character and effect. If the motion to discharge had been denied, it might be said, as in Boyle v. Zacharie, supra, that the court was not bound to act summarily, and that, as the refusal of such a motion leaves other remedies open, the order is not final, and therefore not appealable. But, by whatever method obtained, an order of discharge in such a case is in its nature final. Its revocation or correction cannot be compelled by mandamus, and the only means of relief is by writ of error. Ex parte Flippen, 94 U. S. 348.

Upon the general question whether the omission to pay jail fees in literal compliance with statutory terms entitles a prisoner held under civil process to discharge, a number of subordinate propositions have been discussed; but it is not deemed necessary to follow the briefs in the minute analysis made of the statutes and cited cases. The provisions of sections 30 and 31 in the statutes of Illinois and like enactments of other states, it is agreed, were modeled after what is known as the "Lords' Act" (32 Geo. II. c. 28, §§ 13, 14); and, though there has not been a constant harmony of rulings touching the subject either in the English or American courts, it is clear that the tendency of the later decisions, except in California, has been to a strict construction of the statutes in favor of personal liberty. 1 Tidd; Prac. 382; Anon., Sayer, 102; Fisher v. Bull, 5 Term R. 36; Lench v. Pargiter, supra; Parker v. Harvey, Barnes, Notes Cas. 395; Beech v. Paxton, Id. 367; Shaw v. Gimbert, Id. 369; In re Franklyn, 5 Term R. 36, note; Rex v. Wilkinson, 7 Term R. 156; People v. McHugh, 19 Chi. Leg. News, 177; Hanchett v. Weber, 17 Ill. App. 114; Lambert v. Wiltshire, 144 Ill. 517, 33 N. E. 538; Ex parte Lamson, 50 Cal. 306.

The contention of the plaintiffs in error is—First, that the Illinois statute does not apply to prisoners held under process issued from the courts of the United States; and, second, that, if it does apply, there was in this instance a failure to conform to its requirements.

Upon the first proposition our attention is called to the decision in McNutt v. Bland, 2 How. 9, involving statutes of Mississippi, and to the fact that there is another statute in Illinois (chapter 75, Rev. St., approved March 3, 1874) which makes special and distinct provision for prisoners committed under federal authority, requiring that the fees of the jailer be paid by the marshal or the person delivering the prisoner. The argument is that the provisions of sections 30 and 31 of chapter 72, enacted in 1872, and the amendment of 1887, should not be regarded as intended to apply to the federal

prisoners, since they are especially provided for in the other enactment, which, excepting the amendment to section 31, is the later act of the two. This view is borne out by the decision in McNutt v. Bland, unless by later legislation of congress a different rule has been introduced. In Mississippi, as in Illinois, there was a special provision for prisoners committed under federal process, and a distinct and more general provision for the regulation of imprisonment on civil process. In the case referred to, the latter provision was held to be only a municipal regulation for the guidance of state officials; and we are unable to see that sections 30 and 31 of the Illinois statute, besides being a local municipal regulation, can constitute a restriction upon imprisonment for debt upon federal process, unless given that effect by force of section 990 of the Revised Statutes, the substance of which seems to have been first enacted in the act of February 28, 1839 (5 Stat. 321). The case of McNutt v. Bland was decided in 1844, but the cause of action accrued in 1837. The proposition, in the opinion below, that section 990 is applicable to judgments for torts, it is contended, is inconsistent with the opinion of this court in U. S. v. Arnold, supra, where it was said that "'imprisonment for debt,' as used in this and like statutory provisions, means debts arising out of contracts, and does not extend to actions for tort nor to fines or penalties arising from a violation of the penal laws of the state." Whether the circuit court was justified in treating that part of the opinion as a dictum only, intended simply as a reiteration of the rule that in a constitutional provision abolishing imprisonment for debt the word "debt" does not necessarily comprehend, and should not be construed as comprehending, judgments in tort, we do not deem it necessary now to consider. See In re Tool Co., 160 U. S. 247, 16 Sup. Ct. 291; Railroad Co. v. Schutte, 103 U. S. 118, 143. Neither do we consider section 991, which, as stated in McNutt v. Bland, "provides for the mode of discharging insolvent debtors, committed under process from the courts of the United States."

We rest our decision upon the second proposition, that, if the state statute be conceded to be applicable, there was a failure to comply with its requirements. Let it be assumed that, once a judgment is rendered in an action for tort, it becomes a debt in such sense as to be embraced in a statutory provision concerning imprisonment for debt, and so, coming within the scope of section 990, is brought thereby under sections 30 and 31 of the statute of the state. The full consequence of the proposition must be accepted, and, when a discharge from imprisonment is sought, it must be upon the condition prescribed, that no person shall be released who neglects or refuses to schedule in the manner and form provided by the act of which those sections are a part. To say that the requirement to schedule does not apply to such judgments is to depart from the assumption that a judgment in tort becomes a debt within the meaning of section 990, and consequently within the meaning of sections 30 and 31 of the state statute. If sections 2 to 11 of chapter 72 have no application to a prisoner taken on process upon a judgment

in tort, on what ground can it be said that sections 30 and 31 of the same act apply to such a prisoner? On the other hand, if imprisonment under a judgment in tort is imprisonment for debt, within the meaning of section 990, what difficulty is there in adhering throughout to the idea of debt, and requiring compliance upon that theory with all the conditions of the statute? If the statute cannot be applied in all essential particulars, it should be applied in none. But while it is true that section 2 of chapter 72 and the following sections, which prescribe the proceedings by which a discharge from imprisonment shall be obtained, do not in terms apply to prisoners held under judgments for torts, yet when section 34, which, by its original terms, "arrested on final process," did include judgments for torts, was so amended as to provide that no one should be released under the act who neglected or refused to schedule in manner and form as provided by the act, the clear effect was to make the manner and form prescribed applicable thereafter to prisoners committed by virtue of process upon judgments for torts. If reference be made to chapter 77, which it would seem clear, must be deemed to be in pari materia with chapter 72, the same observations are applicable. Section 5 of that act, if it did not give, recognized the right to take execution against the body of the defendant upon a judgment for tort; and it follows that section 65 of that act, both before and after the amendment of 1887, had reference to prisoners held under such judgments, as well as to those referred to in section 62 of the same act; and when the amendment was added to section 65, "that no person shall be released from imprisonment under this act who neglects or refuses to schedule in manner and form as provided by 'An act concerning insolvent debtors,'" etc. (chapter 72, supra), the plain intention and effect were to include defendants in judgments ex delicto, as well as defendants in judgments ex contractu, who, by subsequent fraudulent conduct, should become subject to execution against the person.

The order discharging the defendant in error from imprisonment is reversed and set aside, and the court below directed to discharge the writ, and remand the prisoner to the custody of the jailer, to be held until discharged according to law.

BUNN, District Judge (concurring in the conclusion). I concur fully in the general conclusion that the order of the circuit court discharging the prisoner must be reversed. I also agree that, if the provisions of the Illinois statute cited in the opinion are applicable to the case, the provision in regard to the debtor's scheduling his property before he is entitled to a discharge is also applicable, and that the order of the circuit court should be reversed, because the statute in that respect has never been complied with. But I would place the decision upon quite different, and, to my mind, more conclusive and satisfactory, grounds. The opinion of the court leaves undecided the two points mainly argued by counsel, and upon one of which the decision of the circuit court discharging the prisoner was based.

1. The Illinois statute relied upon by the prisoner and by the circuit judge in his opinion provides:

"Sec. 30. In all cases where any person is committed to the jail of any county upon any writ (of) capias ad respondendum or capias ad satisfaciendum issued in any suit, it shall be the duty of the creditor in such writ to pay the keeper of the jail or sheriff his fees for receiving such person, and his board for one week at the time the debtor is committed to jail, and before the jailer shall be bound to receive the debtor, and in default of such payment, the debtor may be discharged: provided, the officer having such debtor in charge shall give reasonable notice to the creditor or his agent or attorney, if within the county, that such debtor is about to be committed to jail on such writ.

"Sec. 31. Should the debtor be detained in jail under such writ for more than one week, it shall be the duty of the creditor, at the commencement of each week, to advance to such jailer the board of the debtor for the succeeding week, and in default of such payment in advance, the debtor may be discharged by such jailer. In case the debtor shall not be detained in such jail for any week for which his board may have been paid in advance, the jailer shall return to the creditor, or his agent or attorney, the amount so advanced for and unexhausted in board."

When the prisoner was arrested and sent to jail, a week's board was paid by the creditor in advance, according to the statute; but for mere convenience of sending, being nonresidents of the state, after the first week the money was sent in sums larger than was required to pay just a week's board in advance, but was always sent in advance. So that there was no time when the jailer was entitled to discharge the prisoner, unless because the board bill was paid more in advance than was required by the statute; and it is on this ground the prisoner asked to be discharged, and was discharged by the court below. This is one of the points mainly relied upon by the defendants in error, both in the circuit court and in this court. It is fairly in the case, and may just as well be decided. In my judgment, this point should be ruled against the prisoner, and the order of the circuit court reversed on that ground. I am willing to go as far as any one in adopting a strict construction in favor of personal liberty, provided, always, that a remnant of propriety and good legal sense attend the decision. This provision of the statute was evidently intended as an indemnity to the jailer for the prisoner's board while in jail. The prisoner was not liable for that. The creditor must pay it, and, as a security to the jailer, it was provided that he must pay it in advance, so that the jailer would not have to trust to the creditor. If the creditor should not keep the board bill up by paying a week in advance, the jailer might discharge the prisoner. He was not obliged to, but he might do it. The prisoner had no interest in the matter of the board, except that it should be furnished him at the creditor's cost. If he got his board, it was no great concern of his how long in advance it was paid for by the creditor. The circuit court held that a strict compliance with the statute required the board to be paid just a week in advance, and not more; and, because it was paid two weeks in advance, the prisoner was entitled to be discharged. I know of no decision, ancient or modern, English or American, adopting so strict a rule of construction, and a priori would never expect to find one, for it would seem beyond question that payment of the board bill two weeks or more in advance is not

only a substantial, but a literal, compliance with the statute. Payment two weeks in advance includes payment a week in advance. When one week is closed out, the money for the next week is already in the hands of the jailer, as required by the law; and who is wronged by the money lying there a week or two weeks longer than the statute requires?

The English act, commonly called the "Lords' Act," after which most of such statutes are to some extent modeled, provided for payment of a certain sum direct to the prisoner. There the prisoner was liable for his board, and the tender of the money to offset the board was required to be made by the creditor to the debtor on a day certain in each week. But I find no English case and no American case holding that a payment before the day is not good payment. On the contrary, there are many decisions of the English courts to the effect that payment after the day, if but a little after, and under circumstances showing no willful default, is a compliance with the law. In Beech v. Paxton, Barnes, Notes Cas. 367, where payment was required to be made on Monday, it was held that payment on Tuesday was sufficient. So, in Shaw v. Gimbert, Id. 369, where payment should have been made on Monday, and was made on the subsequent Friday, a discharge was refused because there was no willful default. In Parker v. Harvey, Id. 395, it was held that a mistake is not to be taken advantage of if the tender be recent. A very strict construction, contrary to the English cases, might require a discharge when payment is made at any time after the day required, though it should be but a day or even a fraction of a day; but I cannot give my assent to the doctrine that payment two weeks or more in advance is not a compliance with the provision which requires payment of one week in advance, or that the construction which I contend for is not in accordance with all the just requirements of personal liberty.

The case most nearly allied to the one at bar is that of Ex parte Lamson, 50 Cal. 306. The statute of California differed from the Illinois statute in providing that, in case the board bill was not paid for one week in advance, the prisoner must be discharged. The full report of the case is as follows:

"On the 14th day of March, 1871, a judgment was rendered in the district court of the Fifteenth judicial district, in favor of A. M. Burns, against the petitioner, in a civil action, for the sum of $15,404.94, and convicting him of fraud. On the 3d day of August, 1875, the petitioner was arrested on an execution issued on the judgment, and imprisoned in the jail in San Francisco. About one week after the petitioner had been imprisoned, the attorney for the plaintiff called on the deputy sheriff, and tendered him twenty dollars to pay the expense of keeping the prisoner; but he said he was busy, and could not receive the money then, and Pierson replied that he could have the money at any time. On the 16th of September following, Pierson paid the sheriff for the support of the petitioner, from the time of his arrest to the 24th of September. On the 23d of September, the petitioner applied to the supreme court for his discharge on habeas corpus.

"By the court: The 1154th section of the Code of Civil Procedure requires the plaintiff in execution, who has caused the defendant to be arrested in a civil action, to advance to the jailer moneys sufficient for the support of the defendant while in jail, for one week, and also to make a similar weekly advance for

the same purpose during the imprisonment, and provides that, in case of the failure of the plaintiff to do so, the defendant must be discharged from custody by the jailer. The failure upon the part of the plaintiff to comply with these requirements of the statute does not per se operate as a discharge of the defendant. His interest, so far as he can be said to have one, is merely that he be furnished with proper support while detained in custody. If he be adequately maintained and supplied, it is no concern of his as to the state of the accounts between the jailer and the plaintiff in execution. If the plaintiff satisfy the claim of the jailer, or the latter be willing to trust to the former for reimbursement for supplies furnished the defendant, the purpose of the statute is satisfied. It results from these views that the prisoner must be remanded, and it is so ordered."

2. There was another question discussed by counsel and submitted, which, in my judgment, is conclusive of this case, and that is whether the statutes of Illinois have any application to a prisoner confined in jail under a judgment for tort in a federal court. This question has been passed upon more than once by the supreme court of the United States, and it is fairly in the case for decision. Especially in McNutt v. Bland, 2 How. 9, the precise question here presented was discussed and decided. In that case the defendant had been arrested by the marshal upon an execution upon a judgment in tort, and imprisoned in a Mississippi jail. By the act of Mississippi, the creditor was required to pay the prisoner's board, which he failed to do. The prisoner was thereupon discharged, upon an order of the state court. The creditor sued the sheriff for an escape, claiming that the state laws were a municipal regulation, and did not apply to a case in the federal court. The supreme court of the United States sustained this view. The conformity act of May 19, 1828, in force in 1844, when this decision was made, is, in my judgment, not so different from those since passed as to make the decision inapplicable at the present time. The language of that act is as broad and as clearly inclusive of final process as any statute passed since, and yet the supreme court held that:

"This law, by its own force, cannot apply to persons committed on executions from the courts of the United States. It must first be adopted by act of congress or some rule of court, under the authority conferred on the courts of the United States by law. It is a peculiar municipal regulation, applicable and intended to apply only to persons committed under state process. * * * The act of congress passed in 1800 provides for the mode of discharging insolvent debtors, committed under process from the courts of the United States and the cases in which it may be done. It is obligatory on the sheriffs in every county of the states who have acceded to the resolution of 1789, and no discharge under any state law not adopted by congress, or a rule of court, can exonerate the officer."