## JOHNSON v. CRAWFORD & YOTHERS.

(Circuit Court, Middle District Pennsylvania. March 15, 1907.)

No. 34, October Term, 1905.

**1.** COURTS—FEDERAL COURTS—FEDERAL QUESTION—STATE DECISIONS.

Whether a state statute authorizing arrest of a judgment debtor on certain grounds after the return of an execution unsatisfied has been superseded by the federal bankruptcy law is a federal question, as to which state decisions are merely advisory.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 954.

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

**2.** SAME—STATE WRITS—WARRANT OF ARREST—ISSUANCE BY FEDERAL COURT—STATUTES.

Act Pa. July 12, 1842 (P. L. 339), authorizing the issuance of a warrant of arrest against a judgment debtor for specified causes after the return of an execution unsatisfied, may be enforced by the federal courts sitting in such state under Rev. St. § 716 [U. S. Comp. St. 1901, p. 580], authorizing federal courts to issue writs of scire facias and writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, agreeable to the usages and purposes of law, and section 916 [U. S. Comp. St. 1901, p. 684], declaring that a party recovering a judgment in any common-law case in any Circuit or District Court of the United States shall be entitled to similar remedies on the same as he would be entitled to in a state court.

**3.** BANKRUPTCY—STATE INSOLVENCY LAWS—SUSPENSION.

State insolvency laws are suspended by the bankrupt act of 1898 only so far as the two are in conflict, and in so far as the bankruptcy law covers and supplies what is undertaken to be disposed of by the state law.

**4.** SAME—ASSIGNMENT FOR CREDITORS.

A voluntary assignment for the benefit of creditors, though forming part of the general insolvency system of a state being valid at common law, may be carried out notwithstanding the federal bankruptcy act, unless such assignment is directly called in question by a petition in bankruptcy.

**5.** SAME—ARREST OF JUDGMENT DEBTOR UNDER STATE STATUTE—STATE INSOLVENCY LAW—SUSPENSION BY BANKRUPTCY ACT.

The right to arrest a judgment debtor for specified causes conferred by Act Pa. July 12, 1842 (P. L. 339), was not taken away by the bankruptcy act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), even though the insolvency laws of the state (in effect made a part of the remedy) were superseded thereby; the right of the judgment debtor to relief therefrom, either before or after commitment, by assigning his property for the benefit of creditors, agreeable to the provisions of such insolvent laws, being written into the statute allowing his arrest, and so being preserved to him, notwithstanding that the insolvency laws themselves were superseded, and, even if this were not so, the debtor being entitled to the same relief by resort to the bankruptcy act by which the provisions of the insolvent laws were supplied.

**6.** PRISONS—INCARCERATION OF FEDERAL PRISONERS.

A federal prisoner may be incarcerated in any of the jails of the district.

**7.** COURTS—FEDERAL COURTS—PROCEDURE—EXECUTION—ARREST OF JUDGMENT DEBTOR—BAIL—JURISDICTION OF COURT COMMISSIONERS.

Under Rev. St. § 991 [U. S. Comp. St. 1901, p. 709], providing that all proceedings for discharge from arrest or imprisonment on mesne or final process shall be had before one of the commissioners of the Circuit Court

for the district in which the defendant is held, where a judgment debtor was arrested on a writ issued out of the federal court on the ground that he had property which he refused to apply to a judgment against him, all proceedings to secure his release after commitment other than by petition in bankruptcy must be taken before a United States commissioner.

Rule to Quash Warrant of Arrest.
See 144 Fed. 905; 154 Fed. 769.

Seth T. McCormick, for the rule.
A. L. Cole and C. H. McCauley, opposed.

ARCHBALD, District Judge. On January 11, 1906, the plaintiff recovered a judgment of $27,710.60 against the defendants in an action of assumpsit for timber sold; and, having failed to obtain satisfaction by execution, on December 20, 1906, filed an affidavit charging, in substance, that the defendants had money and property which they fraudulently concealed and refused to apply to the payment of the judgment, and thereupon secured a warrant of arrest under the act of assembly of July 12, 1842 (P. L. Pa. 339). Upon this, one of the defendants, Crawford, was apprehended, and, having been brought into court, has moved to quash the writ upon the ground that in the present state of the law it is not authorized; the right to file a bond to take the benefit of the insolvent laws of the state being an essential part of the proceedings, and, having been suspended by the passage by Congress of the bankruptcy act of 1898, the right to the writ falls with it. The motion is justified by the case of Commonwealth v. O'Hara, 6 Phila. 402, where it was held that a warrant of arrest under the act of 1842 could not be prosecuted in the face of the existing bankruptcy law, the insolvent laws of the state being thereby made inoperative. But it was held, on the other hand, in Gregg v. Hilsen, 12 Phila. 348, by a court of equal authority, just the contrary of this, that nothing short of actual proceedings in bankruptcy would prevent a recourse to the writ; and the question may therefore be regarded as an open one. The further position taken in the O'Hara Case, that the writ was obnoxious to the bankruptcy law and so not allowable, because it would enable the execution creditor to obtain a preference, is an objection which would equally apply to a fi. fa. or other process to enforce the collection of a judgment, and is, of course, not tenable. Chandler v. Siddle, 3 Dill. 479, Fed. Cas. No. 2,594; Berthelen v. Betts, 4 Hill (N. Y.) 572; In re Hoskins, Crabbe, 466; Ex parte Winternitz, 18 Pittsb. Leg. J. (N. S.) 61. And in Scully v. Kirkpatrick, 79 Pa. 324, and Hubert v. Horter, 81 Pa. 39, the writ was sustained notwithstanding bankruptcy, which negatives any such idea; the fact that the debts there were not discharged being immaterial. This is a federal question, however, and must be decided on principle; state decisions at the best being merely advisory.

The act of the Legislature by which the warrant of arrest is given, in substance, provides that in all civil cases, where a party cannot be arrested or imprisoned, it shall be lawful for the plaintiff, having begun suit or obtained judgment, to apply for a warrant to arrest the defendant, upon proof by affidavit that he is about to remove any

of his property out of the jurisdiction of the court with intent to defraud his creditors; or that he has property which he fraudulently conceals, or money or property which he unjustly refuses to apply to the payment of the judgment rendered against him; or that he has assigned, removed, or disposed, or is about to assign, remove, or dispose, of his property with like fraudulent intent; or that the debt in suit was fraudulently contracted. And, the defendant having been thereupon brought in, if the judge by whom the writ was allowed is satisfied that the charges made in the affidavit are substantiated, and that the defendant has done or is about to do any of the acts complained of, he shall commit him to the jail of the county in which the hearing is had, to be there detained until he shall be discharged by law: provided that he shall not be committed, if he pays the debt or demand with costs, or gives satisfactory security to pay the same with interest, within 60 days, if the demand is in judgment and the time allowed for a stay has expired; or gives bond, with sufficient sureties, that he will not assign or remove his property, where that is the fraudulent design charged; or gives like bond to apply within 30 days to the common pleas of the county for the benefit of the insolvent laws of the state, and to comply with the requirements of such laws, and, failing to obtain a discharge, shall surrender himself to the jail again. After having been committed, he may also be relieved from custody upon judgment being rendered in his favor in the pending suit, or upon assigning his property and obtaining a discharge in due course, or by paying or securing the demand with costs, or upon giving either of the bonds mentioned as aforesaid. In taking the benefit of the insolvent laws, either before or after commitment, the defendant is required, as to the matters set forth in his petition, the notice to be given to creditors, the oath to be administered to him, and all things touching his property, to proceed agreeably to the provisions of the act of June 16, 1836 (P. L. 729), entitled "An act relating to insolvent debtors"; the trustee to whom the assignment is made being given the same powers and duties, creditors the same rights and remedies, a discharge the same effect, and the defendant made liable civilly and criminally the same as if the provisions relating thereto were in the warrant of arrest act fully and at length enacted. Turning to the act of 1836 for a better understanding of these provisions, it appears that in his petition to the court for the benefit of the insolvent laws the debtor is to make a statement under oath of all his property and effects and of the debts he owes, giving the names of his creditors, the amounts due to each of them, the nature of the indebtedness, and the causes of his insolvency. And a time for a hearing thereon having been fixed, and due notice given to creditors, he is thereupon to exhibit to the court a just and true account of his debts, credits, and estate, producing, if required, his books and papers relating thereto, and answering all questions that may be put to him touching the same; and having taken an oath to deliver up all his possessions, and denying any transfer or conveyance in fraud of creditors, he is to execute an assignment thereof to a trustee for the benefit of creditors, being thereafter relieved and discharged from liability to imprisonment by reason of any judgment or decree for the payment of money or for

any debt or damages before that contracted, occasioned, or accrued, but property subsequently acquired is still to be liable, although after obtaining a discharge it may, by order of court, on consent of a majority in number and value of creditors, be made exempt from execution for seven years as to any previously existing debt or cause of action. It is further made the duty of the trustee to collect and convert the property so turned over to him, and, having accounted therefor, to distribute the same to creditors, under the direction of the court, upon due proof made of their respective claims. This in a general way was the system of insolvency prevailing at the time the act of 1842, authorizing a warrant of arrest was passed. More recently by act of June 4, 1901 (P. L. 406), there has been a revision and amplification of the law, modifying in some respects the provisions of the act of 1836 which is in terms repealed; but, being in the main the same, the most important difference being that voluntary assignments for the benefit of creditors, as well as those made after arrest upon civil process are provided for, and that creditors, upon accepting a dividend from the insolvent estate, are required to execute releases. So stood the law at the time the warrant of arrest in the case in hand was issued.

That, under the circumstances and subject to the conditions named in the statute, the right to such a warrant exists in the federal, the same as in the state courts, there can be no serious question. As a remedy by execution to reach the property of the debtor given by the state law, it either is carried into the federal law, as provided by section 916 of the Revised Statutes [U. S. Comp. St. 1901, p. 684]; or, being sanctioned by the state statute and so being agreeable to the usages and principles of law, it is to be regarded as a writ, which, although not specifically provided for by act of Congress, is capable of being adopted as necessary for the full and complete exercise of the jurisdiction of the federal courts, within the meaning of section 716. It stands in fact much the same as a capias ad satisfaciendum, of which it may be considered as only another form. Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253; Bank v. Halstead, 10 Wheat. 51, 6 L. Ed. 264; Ex parte Boyd, 105 U. S. 647, 26 L. Ed. 1200; Lamaster v. Keeler, 123 U. S. 376, 8 Sup. Ct. 197, 31 L. Ed. 238; U. S. v. Arnold, 69 Fed. 987, 16 C. C. A. 575; Stroheim v. Deimel, 77 Fed. 802, 23 C. C. A. 467. Of course, it goes into the federal law, if at all, with all its essential incidents, and the method of procedure marked out with regard to it by the state statute has therefore to be substantially followed. And the defendant, after having been taken into custody, and being about to be committed, having the right, as a part of it, to be released upon giving bond to take the benefit of the insolvent laws, or at least agreeably to the provisions of these laws, if this right is to be regarded as inhering in the remedy, and has been taken away by the passage of the bankruptcy act, as argued, without anything else being supplied, the right to the writ itself is also therewith necessarily abrogated.

That the right to relief agreeably to the insolvent laws of the state, either before or after commitment, inheres in the remedy, can hardly be doubted. This alternative is expressly given by the

statute; it being declared that the defendant, upon the facts on which the writ is predicated having been found against him, shall not be committed, if he shall enter into a bond to the plaintiff to apply within 30 days for the benefit of these laws, and shall comply in all respects with their requirements; or, in default thereof and failing to obtain a discharge, shall surrender himself into custody again. It must be assumed that the Legislature, in allowing the writ, would not have sanctioned it upon any other terms; and the measure of relief which is so afforded being thus in contemplation, as an essential part of the proceedings, they are left incomplete and dismembered without it. In this respect, it differs from the case of a ca. sa. the right to be discharged from custody, which is there given by resort to the insolvent laws, being a separate and independent statutory provision, as to which, if it is taken away or suspended by the passage of a bankruptcy act, the defendant is simply left without the opportunity to be released which would otherwise be afforded him. Steelman v. Mattix, 36 N. J. Law, 344; In re Rank, Crabbe, 493, Fed. Cas. No. 11,566. It is to be noted, however, that these observations do not apply where the fraudulent design charged, upon which the warrant of arrest is allowed, is that the defendant is about to remove his property out of the jurisdiction of the court with intent to defraud his creditors; the alternative, in order to escape commitment, where that is the fact, being simply that he shall give bond not to remove it nor to prefer other creditors. Neither are they applicable where the defendant gives security to pay the debt or demand with interest and costs, within 60 days if it is in judgment and the time for a stay has expired, or, if not in judgment, within a like period after it shall have been recovered, in either of which cases the superseding of the insolvent laws by a bankruptcy law is of no consequence, and the right to the writ therefore as to them is beyond controversy.

It is also, of course, unquestioned that state insolvency laws, whether a discharge of the debtor from his liabilities is thereby provided for or not, are superseded and suspended by the passage of a federal bankruptcy law; the authority of Congress on the subject being paramount. Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606; Tua v. Carriere, 117 U. S. 201, 6 Sup. Ct. 565, 29 L. Ed. 855; In re Salmon (D. C.) 143 Fed. 395; In re International Coal Mining Co., 143 Fed. 665; Harbaugh v. Costello, 184 Ill. 110, 56 N. E. 363, 75 Am. St. Rep. 147; Parmenter Mfg. Co. v. Hamilton, 172 Mass. 178, 51 N. E. 529, 70 Am. St. Rep. 258; In re Reynolds, 8 R. I. 485, 5 Am. Rep. 615; Potts v. Smith Mfg. Co., 25 Pa. Super. Ct. 206. Only, however, as the two conflict, is this true, and it is only, therefore, where the bankruptcy law covers and supplies that which is undertaken to be disposed of by the state law, that the latter must give way. It does not apply, for instance, to voluntary assignments for the benefit of creditors, although forming a part of the general insolvency system of the state and regulated to a certain extent by statute; it being held that, as these are good at common law, they are to be carried out and given effect unless they are directly called in question by a petition in bankruptcy. Mayer v. Hellman, 91 U. S. 496, 23 L. Ed. 377; Boese v. King, 108 U. S. 379, 2 Sup. Ct.

765, 27 L. Ed. 760; Beck v. Parker, 85 Pa. 262, 3 Am. Rep. 625; Reed v. Taylor, 32 Iowa, 209, 7 Am. Rep. 180; In re Sievers (D. C.) 91 Fed. 366. The same is true, also, of proceedings given by statute to wind up the affairs of an insolvent corporation by the appointment of a receiver (In re Watts & Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933; In re Wilmington Hosiery Co. [D. C.] 120 Fed. 180); and so is it as to debts and claims which are not discharged by bankruptcy (Scully v. Kirkpatrick, 79 Pa. 324, 21 Am. Rep. 62; Hubert v. Horter, 81 Pa. 39; Ex parte Winternitz, 18 Pittsb. Leg. J. [N. S.] 61); as well as to those persons whose debts do not aggregate the requisite amount (Shephardson's App., 36 Conn. 23); or who are not subject to proceedings, such as wage-earners, farmers, and corporations not made specifically liable (Rittenhouse's Estate, 30 Pa. Super. Ct. 468). Neither, as it has been held, does the existing bankruptcy law meet the case of an absconding debtor, so as to prevent the issuing of a domestic attachment. McCullough v. Goodhart, 8 Dist. (Pa.) 378. Poor debtor laws, and those which provide for the release of insolvent convicts, would seem to be in the same situation; the bankruptcy law having no provision adapted to these cases, and the parties to whom they apply being, otherwise, left without remedy. Jordan v. Hall, 9 R. I. 219, 11 Am. Rep. 245. And, notwithstanding the concession made above, not a little could also be said in favor of those insolvent laws, such as the act of 1836, which merely provide means for relieving from custody a debtor who has been arrested upon civil process without undertaking to discharge him from his liabilities. Steelman v. Mattix, 36 N. J. Law, 344; In re Rank, Crabbe, 493, Fed. Cas. No. 11,566; Sullivan v. Hieskell, Crabbe, 525, Fed. Cas. No. 13,594. Subject to these exceptions, however, but without losing sight of their significance, the insolvent laws of a state being rendered inoperative by an existing federal bankruptcy law, those of Pennsylvania must be regarded as no longer in force, with all the attendant consequences, whether the act of 1836 or that of 1901 be taken to represent them.

But it by no means follows that the right to a warrant of arrest such as is now in controversy is thereby disposed of. The state insolvency system which is superseded by the enactment by Congress of a bankruptcy law is one thing, and the relief accorded to a debtor in custody under a warrant of arrest, agreeably to its provisions, is another, and the two are not to be confounded. The debtor, in other words, secures a release, not by virtue of the insolvent laws, but simply in conformity with them; that is to say, by following the course which is there marked out, the one statute, so far as it is applicable, being written into the other. How far in this respect the act of 1901 takes the place of the act of 1836, which has been repealed by it, it is not important to inquire. Whichever be taken, having been made a constituent part of the act of 1842, the right thereby secured to a debtor in custody under a warrant of arrest, either before or after commitment, is preserved and retained and made available to him without regard to the fate of the insolvent laws as such, whether suspended or repealed, being in effect independent of them. I do not lose sight of the fact that the bond, which the de-

fendant is to give, is in terms to take the benefit of these laws and to comply with their requirements, and that the petition which he is to present to the court for leave to do so is to set forth what is directed by the act of 1836, and to be verified in accordance with it. But a careful reading of the act of 1842 (sections 14, 15, 16) will disclose that this amounts to no more than an adoption of the course to be pursued and the steps to be taken by the act referred to; the reference over being made for the sake of convenience merely and to avoid unnecessary repetition. Suppose, for example, that the provisions of the act of 1836 had been written into the act of 1842 at length —as by express declaration is in effect the case—and it was there enacted, as now, that upon complaint being made of any of the several matters, upon which the writ is allowable, a warrant should go out, and upon the defendant being brought in and the facts found against him, he should be committed, to be released, however, upon giving bond that within 30 days he would petition the court for leave to assign his property for the benefit of creditors to be administered and distributed under the direction of the court; and so on, according to all that is provided for. Can there be any serious question that the warrant as so authorized could issue, regardless of whether or not the state insolvent laws from which these provisions had been taken had been superseded by an act on the subject of bankruptcy? And yet that in effect is the situation here. Or, to put it in another form, the act of 1842, in adopting and incorporating into itself, as an alternative of the proceedings upon the warrant, the course marked out by the insolvent laws for the relief of a failing debtor, is not thereby made a part of the insolvency system of the state, nor so tied up to it as to be obnoxious to an existing bankruptcy law and be nullified thereby. A petition in bankruptcy, duly prosecuted, is no doubt effective to avoid the proceedings. Barber v. Rogers, 71 Pa. 362. But the statute by which the warrant is given is no more affected by the bankruptcy law itself, and is no more incompatible with it—aside from the question of getting a preference—than is that which sanctions a capias or any other execution process to reach the person or property of the debtor of which it is only an additional and special form.

This disposes of the case; but there is another ground upon which the right to the writ may be sustained. As pointed out above, a warrant of arrest, being authorized by the statutes of the state, must be regarded as agreeable to the usages of law; and, being necessary to a complete exercise of the court's jurisdiction, is capable of being adopted, although not specifically provided for by any federal statute. Rev. St. § 716 [U. S. Comp. St. 1901, p. 580]. But in incorporating it into the federal law the court is only called upon to preserve the substance; and if, as argued, notwithstanding the views expressed above, the insolvent laws of the state are superseded and the defendant thereby deprived of the right to resort to them which he would otherwise have as a means of being relieved from custody, the bankruptcy law by which this is brought about may well be looked to, to supply what is lacking. It is equally effective and entirely appropriate, the commitment of the defendant being merely until he

shall·be discharged by law; and is even more readily available, no bond being required nor anything in fact but. the filing of a proper petition. Proceedings in bankruptcy also undoubtedly do away with the necessity for taking the benefit of the insolvent laws, although a bond may have been given by the defendant to do so. Nesbit v. Greaves, 6 Watts & S. (Pa.) 120; Barber v. Rogers, 71 Pa. 362. And why, then, may not a complete substitute be found in them? The writ is to be saved, if possible; and, if it can be done by falling back upon the bankruptcy law in this way, there is no reason why the practice should not to that extent be modified, not only in the federal, but in the state courts as well, it being desirable, of course, if not indeed necessary, that the two should be in harmony. It is true that a resort to bankruptcy would not release the defendant where the debt or demand· upon which the warrant of arrest was predicated was not dischargeable. Scully v. Kirkpatrick, 79 Pa. 324, 21 Am. Rep. 62; Hubert v. Horter, 81 Pa. 39; In re Winternitz, 18 Pittsb. Leg. J. (N. S.) 61. But in that case the right to the benefit of the insolvent laws would not be interfered with, and there is no occasion therefore to consider it.

In whatever way we look at the case, therefore, the writ is sustained; and, the affidavit on which it was issued not having been denied, the defendant must be committed unless he is prepared to comply with the other alternative. A question is raised as to where the commitment should be. The act says to the jail of the county in which the hearing is had. But all the jails of the district are open to federal process, and the Lycoming county jail, at Williamsport, where the court was sitting when the defendant was brought in and where it will be convenient for him to confer with his counsel, will therefore be selected. It may be well to note, in this connection, that any proceedings. to secure his release, after commitment, other than by a petition in bankruptcy, will have to be taken before a United States commissioner, the state courts having no authority to relieve those who are committed upon a writ from the federal courts. Rev. St. § 991 [U. S. Comp. St. 1901, p. 709]; Duncan v. Darst, 1 How. 301, 11 L. Ed. 139; McNutt v. Bland, 2 How. 9, 11 L. Ed. 159.

The rule to show cause why the warrant of arrest should not be quashed is discharged; and thereupon the defendant is committed to the common jail of Lycoming county, at Williamsport, Pa., to be there detained until he shall be discharged by law.