HUGH BOYLE, PLAINTIFF IN ERROR v. JAMES W. ZACHARIE
AND SAMUEL H. TURNER.

A writ of error will not lie to a circuit court of the United States, to revise its
decision in refusing to grant a writ of venditioni exponas, issued on a judgment
obtained in that court. A writ of error does not lie in such a case.
All motions to quash executions are addressed to the sound discretion of the court,
and as a summary relief which the court is not compellable to allow. The
party is deprived of no right by the refusal; and he is at full liberty to redress
his grievance by writ of error, or audita querela, or other remedy known to the
common law. The refusal to quash, is not in the sense of the common law a
judgment, much less a final judgment. It is a mere interlocutory order.
Even at common law, error only lies from a final judgment; and by the express
provisions of the judiciary act of 1789, a writ of error lies to this court only in
cases of final judgments.
The acts of Maryland regulating the proceedings on injunctions and other chan-
cery proceedings, and giving certain effects to them in courts of law, are of no
force in relation to the courts of the United States. The chancery jurisdiction
given by the constitution and laws of the United States, is the same in all the
states of the union, and the rule of decision is the same in all. In the exer-
cise of that jurisdiction the courts of the United States are not governed by
the state practice, but the act of congress of 1792, chap. 36, has provided that
the modes of proceeding in equity suits shall be according to the principles,
rules and usages which belong to courts of equity, as contradistinguished from
courts of law. And the settled doctrine of this court is, that the remedies in
equity are to be administered, not according to the state practice, but accord-
ing to the practice of courts of equity in the parent country, as contradistin-
guished from courts of law; subject, of course, to the provisions of the acts of
congress, and to such alterations and rules as in the exercise of the powers
delegated by those acts, the courts of the United States may from time to time
prescribe.
In respect to suits at common law, it is true that the laws of the United States
have adopted the forms of writs and executions, and other process, and the
modes of proceeding authorised and used under the state laws, subject, how-
ever, to such alterations and additions as may from time to time be made by the
courts of the United States. But writs of execution issuing from the courts of
the United States in virtue of those provisions, are not controlled or control-
lable, in their general operation or effect, by any collateral regulations and re-
strictions which the state laws have imposed upon the state courts to govern
them in the actual use, suspension or superseding of them. Such regulations
and restrictions are exclusively addressed to the state tribunals, and have no
efficacy in the courts of the United States, unless adopted by them.
The cases of Palmer v. Allen, 7 Cranch's Rep. 550, 564; Wayman v. Southard,
10 Wheat. Rep. 1, and the Bank of the United States v. Halstead, 10 Wheat.
Rep. 51, cited.

ERROR to the circuit court of the United States for the dis-
trict of Maryland.

[Boyle v. Zacharie and Turner.]

The facts of this case are stated, in part, in the preceding equity case; and in the opinion of the court, delivered by Mr Justice Story.

The defendants in error, citizens of Louisiana, and merchants of New Orleans, instituted a suit in the circuit court against Hugh Boyle of Baltimore, for the amount which they had been obliged to pay as his securities in an attachment against his property at New Orleans.    The action was brought on the 23d December 1819.

Mr Boyle appeared to the suit at May term 1820, and filed a plea of non-assumpsit, and issue was joined: the cause was then continued to November term 1820, and then to May term 1821, when the defendant withdrew his plea, and confessed judgment for the damages in the declaration and costs: these damages to be released upon the payment of three thousand one hundred and thirteen dollars and eighty cents, with interest from 15th November 1819, and seventeen dollars and twenty-five cents costs, " subject to the *legal operation* of the defendant's discharge under the insolvent laws of Maryland." On the 8th October 1822, a scire facias was issued to revive the judgment, and a fiat was entered on the 7th November 1823, and for sixteen dollars and seventy-five cents costs on fiat.

A fieri facias, to lie, was issued to December term 1824, and renewed from time to time until 12th December 1827, when it was taken out of the office and delivered to the marshal; and was by him, on the 31st day of March 1828, levied on the ship called the General Smith, and so by him returned to May term 1828, in these words: " Levied as per schedule on 31st day of March 1828.    Injunction issued on the 8th April 1828."

On 7th April 1828, the plaintiff in error filed his bill of complaint on the equity side of the circuit court against Zacharie and Turner, to stay proceedings at law upon the judgment; and a writ of injunction was granted by the circuit judge, and issued on the 8th day of the same month.

The bill which had been filed by the plaintiff in error on the equity side of the court having been dismissed, the attorney for the plaintiffs, on the 10th June 1829, gave an order to the clerk to issue a writ of venditioni exponas, which was issued on the 29th August 1829, and delivered to the marshal, who

made a return thereof to the December term 1829, that he had received the amount of the execution from the defendant, and had it ready to bring into court.

The defendant at the same term made a motion to quash the writ of venditioni exponas, and filed the following reasons in support of his motion.

1. That the judge who granted the said writ of injunction required the defendant, Hugh Boyle, to execute an injunction bond or obligation, before the said writ was issued.    The bond was in the common form.

2. And also the one hundredth rule of the court, adopted, with others, by the circuit court of the United States for the fourth circuit, in and for the district of Maryland; passed and adopted by the court, as the rules for the orderly conducting of business in the court in cases at common law, and to regulate the practice in the court; at November term 1802.

*One Hundredth Rule.* "Writs of capias ad satisfaciendum, fieri facias (or attachment by way of execution), as authorized by the act of assembly of this state, may issue at the option of the party in whose favour any judgment shall be rendered for the recovery of any debt or damages; but only one execution shall be served returnable to the same court, unless sufficient money shall not be levied to satisfy the judgment, in which case the capias ad satisfaciendum may be afterwards served for the residue, which shall be indorsed thereon, and the costs of the writ not served shall be paid by the party issuing it."

And also the act of the general assembly of Maryland, passed at November session 1799, chapter 79, entitled "an act to prevent unnecessary delay and expense, and for the further advancement of justice in the court of chancery;" and also the act of the general assembly of Maryland, entitled "an act for the ease of the inhabitants in examining evidences relating to the bounds of lands, and in the manner of obtaining injunctions," passed at October session 1723, chapter 8.

And also appealed to the knowledge of the court, that according to the uniform and immemorial practice in the state of Maryland, with regard to the state courts, whenever a writ of fieri facias had been levied, and the proceedings were stayed by injunction before the day of sale, the officer who had levied the writ of fieri facias delivered up the property seized by

[Boyle v. Zacharie and Turner.]

him, to the defendant at law, upon the service upon the said officer of notice of the writ of injunction.

The court overruled the motion, and ordered and directed the marshal to bring into court the money mentioned in his return, and the cause was removed to this court by writ of error.

The case was argued by Mr Wirt, for the plaintiff in error; and by Mr Scott, for the defendants.

Mr Wirt contended: 1. That there was error in not quashing the writ of *venditioni exponas;* because the equity cause, lately depending in the same court, between the same parties, on account of the same cause of action, having been set down for a *final* hearing, and a *final* decree having been passed dissolving the injunction issued in said equity cause, and that decree being appealed from, and an appeal bond having been filed and approved by the court, and the proceedings transmitted to the appellate court where they are still pending; the *execution* of the judgment enjoined against, should have been stayed by the appeal until affirmance of the decree.

2. That the property seized under the writ of *fieri facias* should have been delivered up by the marshal to the defendant at law (plaintiff in error), *on service of the writ of injunction,* according to the law and practice of the courts of the state of Maryland; and is to be considered as having been so delivered up; and therefore a writ of *venditioni exponas* could not properly issue, even if *other* process might.

3. That whether the law and practice of the courts of Maryland justified the marshal in the delivery up of the property taken in execution, or not, a writ of *venditioni exponas* was not the proper process which ought to have issued.

4. That if such a writ was the proper process, it was fatally defective in form, as well as in substance, and ought therefore to have been quashed.

5. That on the return of the marshal made to the *venditioni exponas,* the court below erred in requiring the money to be brought into court.

Mr Wirt contended that the appeal in the equity case was a supercedeas in this case; and the venditioni was therefore improperly issued.

Originally, all cases were brought up to this court by writ

of error, which was always a supercedeas if prosecuted in time. This practice was changed by the act of congress of 1803; and now the appeal operates precisely as did a writ of error; and the taking out the execution was irregular.    Cited, 2 Wheat. 132; Coxe's Dig. 50, 51.    As to the practice in the state of Maryland, cited 6 Har. and John. 332.

After the cause is in this court, it ought to have the power to see that no further proceedings be had in the court below.

In all cases of proceedings in rem, and bond and security given, the bond is a substitute for the res ipsæ; which is thereupon restored to the party.    Act of Maryland, 1723, ch. 28; act 1799, ch. 79.    It is admitted that these laws have no force in the courts of the United States, but under the power of the court to adopt the state practice.    As to adopting the state practice, cited 10 Wheat. 51; 10 Wheat. 1.    As to the right of the party to take out a writ of error in such a case, cited 7 Cranch, 278.

The motion to grant the venditioni is a substitute for the writ of audita querela.    This is now obsolete; and relief is granted on motion, where audita querela was formerly brought. Cited, 3 Black. Com. 406.

Mr Scott, for the defendants in error, contended that this case was not properly before the court.

The supreme court, although a court exercising common law jurisdiction, was a court of statutory jurisdiction; and we must look to the constitution of the United States and the acts of congress for the subjects proper to be brought before the court.    A writ of error will not lie to bring up an execution from a circuit court, and more than five years had elapsed from the rendition of the judgment before the issuing of the writ of error: and the court could, therefore, take no cognizance of the judgment of the circuit court, or of the proceedings upon that judgment, because a writ of error would not lie upon the judgment after five years: and there was no provision in any act of congress for bringing up an execution.

He also contended, that the proceedings on a judgment come properly within the discretion of the court by which the judgment was rendered; and in England a writ of error would not lie merely to bring up an execution; and where the king's

[Boyle v. Zacharie and Turner.]

bench in England had quashed an execution, which had been issued by another court, and which had been brought before that court, the judgment, upon which the execution had been issued, as well as the execution itself, had been brought before the court, and that the court had proceeded to quash, for error in the judgment.  In this case there was no error in the judgment, and none was alleged; if there were error, this court could not correct it after five years: and, independent of the first objection, this court could not look at the execution, the judgment not being properly before it.

He also contended, that even if this case were properly before this court, the writ of venditioni exponas was properly issued, and the motion to quash it was rightly overruled; and the circuit court was right in directing the marshal to bring the money into court.

1. Because the supreme court considers the practice of the king's bench and chancery court as affording the outlines for its practice.   2 Dallas, 411.

2. Because the remedies in the courts of the United States, in equity, are not according to the practice of state courts, but according to the principles of equity, as distinguished and defined in those courts, from which we derive our knowledge of those principles.   Seventh rule of court, 8th August 1791. Robinson v. Campbell, 3 Wheat. 212, 221.

3. And because the circuit courts of the union have chancery jurisdiction in every state, and have the same chancery powers, and the same rules of decision in all the states.   The United States v. Howland, 4 Wheat. 108, 115.

He then assumed the proposition, that the writ of fieri facias was properly issued; and showed from the record that it was levied upon "the ship General Smith," as the property of Boyle, eight days before the issuing of the writ of injunction, viz. upon the 31st day of March 1828; and that the writ of injunction was not issued until the 8th April 1828: and he contended, that the writ of venditioni exponas was issued in conformity to the practice in England: and referred to Eden on Injunctions, 34; 1 Maddox on Chancery Practice, 130, for the purpose of showing, that the fieri facias having been levied before the issuing of the writ of injunction, that the defendant and plaintiff in error was not entitled to have the ship

delivered up to him upon the service of the writ of injunction; and the venditioni exponas having issued according to the practice in England, it would not be affected by the one hundredth rule of the circuit court; and that the application of that rule to the case before the court, would destroy the uniformity of the practice in the courts of equity of the United States. He also contended, that the application of the acts of assembly of Maryland, viz. September 1723, chap. 8, sec. 5, and 1799, ch. 79, sec. 10, which had been relied on by the plaintiff in error, and of the Maryland practice under those acts of assembly, would be a legislative, not a judicial act, unwarranted by the constitution and laws of the United States, contrary to the English practice, and contrary to the practice of the courts of the United States.

He also insisted there was no error in issuing the venditioni exponas pending the appeal; and it was no breach of the injunction so to do; because the fieri facias and the venditioni exponas were but one execution; and that the execution having been begun before the issuing of the writ of injunction, it was the right of the plaintiff at law to have it completed: but he admitted, that pending the appeal and writ of error, he could not have taken out a new execution; and he relied on Metton v. Eldrington, 1 Dyer, 98, b, where a venditioni exponas was issued after a scire facias, although a supersedeas. Also Charter v. Pector, Cro. Eliz. 597; and that the circuit court was right in directing the marshal to bring into court the money which he had received on the execution.

Mr Justice STORY delivered the opinion of the Court.

This is a writ of error to the circuit court of the district of Maryland, between the same parties, and upon the same judgment on which the bill in equity, which has just been disposed of, was founded. The facts relative to the judgments need not be again repeated, as they are fully disclosed in the preceding cause.

The object of the present writ of error is to revise the decision of the circuit court in refusing to quash a writ of venditioni exponas issued for the sale of the ship General Smith, which was seized upon the fieri facias on the judgment, upon a motion made by the counsel for Boyle for that purpose.

[Boyle v. Zacharie and Turner.]

The fieri facias was levied on the ship on the 31st of March 1828; the bill in equity was filed, and an injunction awarded, on the 8th of the succeeding April.   On the 8th of May following, the writ of fieri facias was returned to the circuit court with the marshal's return thereon, "levied as per schedule on the 31st of March 1828.   Injunction issued on the 8th of April 1828."   On the 29th of August 1829, a writ of venditioni exponas issued from the circuit court, returnable to the next December term of the court.   At the return term, a motion was made in behalf of Boyle, to quash the venditioni exponas, grounded, among other things, upon the injunction, and bond given in pursuance thereof, and the provisions of the act of Maryland of 1799, chap. 79, and the act of Maryland of 1723, chap. 8.   A rule was then made at the same term upon the marshal, to return the writ of venditioni exponas, upon which he made a return, in substance, that the amount of the money had been paid into his hands, and was now in bank to his credit, to be returned as made under the writ of venditioni exponas, if the court should be of opinion that it rightfully issued, and empowered and obliged the marshal to sell the ship seised under the fieri facias issued in 1828, stayed by injunction as aforesaid.   The court overruled the motion to quash the venditioni exponas, and ordered the money returned on the writ to be brought into court.   The present writ of error is brought upon this refusal to quash the venditioni exponas.

The first question naturally presenting itself upon this posture of the facts is, whether a writ of error lies in such a case.  It is material to state, that no error is assigned on the original judgment, or on the award of the fieri facias, which indeed are conceded to have been rightfully issued, and to be above exception.   But the error assigned is the supposed irregularity and incorrectness of the award of the venditioni exponas, after the writ of injunction from the chancery side of the court had been granted.

The argument to maintain the writ of error has proceeded, in a great measure, upon grounds which are not in the slightest degree controverted by this court.   It is admitted that the language in Co. Litt. 288, b. is entirely correct, in stating that "a writ of error lieth when a man is grieved by an error in

the foundation, proceeding, judgment or execution" in a suit. But it is added, in the same authority, that " without a judgment on an award in the nature of a judgment, no writ of error doth lie." If, therefore, there is an erroneous award of execution, not warranted by the judgment, or erroneous proceedings under the execution, a writ of error will lie to redress the grievance. The question here is not whether a writ of error lies to an erroneous award of execution, for there was no error in the award of the fieri facias. But the question is, whether a writ of error lies on the refusal to quash the auxiliary process of venditioni exponas, upon mere motion. In modern times, courts of law will often interfere by summary proceedings on motion, and quash an execution erroneously awarded, where a writ of error or other remedy, such as a writ of audita querela, would clearly lie. But, because a court may, it does not follow that it is bound thus to act in a summary manner; for in such cases the motion is not granted ex debito justitiæ, but in the exercise of a sound discretion by the court. The relief is allowed or refused, according to circumstances; and it is by no means uncommon for the court to refuse to interfere upon motion, in cases where the proceedings are clearly erroneous, and to put the party to his writ of error or other remedy; for the refusal of the motion leaves every remedy, which is of right, open to him.

In Brooks v. Hunt, 17 Johns. Rep. 484, Mr Chancellor Kent, in delivering the opinion of the court of errors, alluding to this practice, said, " it is not an uncommon thing for a court of law, if the case be difficult or dubious, to refuse to relieve a party after judgment and execution in a summary way by motion, and to put him to his audita querela." That was a case very similar to the present. A motion was made to the supreme court of New York to set aside a fieri facias, on the ground that the party was discharged under the insolvent laws of that state. The court refused the motion; and on error brought, the court of errors of New York quashed the writ of error. Mr Chancellor Kent, on behalf of the court, assigned as one of the grounds of quashing the writ of error, that the rule or order denying the motion was not a judgment within the meaning of the constitution or laws of New York. It was only a decision upon a collateral or interlocutory point,

[Boyle v. Zacharie and Turner.]

and could not well be distinguished from a variety of other special motions and orders, which are made in the progress of a suit, and which have never been deemed the foundation of a writ of error. A writ of error would only lie upon a final judgment or determination of a cause; and it was never known to lie upon a motion to set aside process. And in the close of his opinion, he emphatically observed, if the case "is to be carried from this court to the supreme court of the United States, I should hope, for the credit of our practice, it might be on the audita querela, and not upon such a strange mode of proceeding as that of a writ of error brought upon a motion and affidavit." There are other cases leading to the same conclusion. See Wardell v. Eden, 1 Johns. Rep. 531, note. Wicket v. Creamer, 1 Salk. 264. Johnson v. Harvey, 4 Mass. Rep. 483. Bleasdale v. Darby, 9 Price, 600. Clason v. Shotwell, 1 Tidd's Prac. 470, 471; Kent's (Chancellor) Opinion, 12 Johns. Rep. 31, 50. Com. Dig. Pleader, 3 B. 12. A very strong case illustrating the general doctrine is that error will not lie to the refusal of a court to grant a peremptory mandamus, upon a return made to a prior mandamus, which the court allowed as sufficient. This was held by the house of lords in Pender v. Herle, 3 Bro. Parl. Cases, 505.

We consider all motions of this sort to quash executions, as addressed to the sound discretion of the court; and as a summary relief, which the court is not compellable to allow. The party is deprived of no right by the refusal; and he is at full liberty to redress his grievance by writ of error, or audita querela; or other remedy known to the common law. The refusal to quash is not, in the sense of the common law, a judgment; much less is it a final judgment. It is a mere interlocutory order. Even at the common law, error only lies from a final judgment; and by the express provisions of the judiciary act of 1786, chap. 20, sec. 22, a writ of error lies to this court only in cases of final judgments.

But if this objection were not, as we think it is, insuperable, there would be other decisive objections against the party. In the first place, the very ground of argument to maintain the motion to quash is, that the injunction operated as a supersedeas of the execution, according to the acts of Maryland of 1723, chap. 8, and of 1799, chap. 79, regulating proceedings

in chancery and injunctions, which give to an injunction the effect of a supersedeas at law. But the acts of Maryland regulating the proceedings on injunctions, and other chancery proceedings, and giving certain effects to them in courts of law, are of no force in relation to the courts of the United States.

The chancery jurisdiction given by the constitution and laws of the United States is the same in all the states of the union, and the rule of decision is the same in all. In the exercise of that jurisdiction, the courts of the United States are not governed by the state practice; but the act of congress of 1792, ch. 36, has provided that the modes of proceeding in equity suits shall be according to the principles, rules and usages which belong to courts of equity, as contradistinguished from courts of law. And the settled doctrine of this court is, that the remedies in equity are to be administered, not according to the state practice, but according to the practice of courts of equity in the parent country, as contradistinguished from that of courts of law; subject, of course, to the provisions of the acts of congress, and to such alterations and rules as in the exercise of the powers delegated by those acts, the courts of the United States may, from time to time, prescribe. Robinson v. Campbell, 3 Wheat. R. 212; United States v. Howland, 4 Wheat. R. 108. So that, in this view of the matter, the effect of the injunction granted by the circuit court was to be decided by the general principles of courts of equity, and not by any peculiar statute enactments of the state of Maryland.

Strictly speaking, at the common law an injunction in equity does not operate as a supersedeas; although it may furnish a proper ground for the court of law, in which the judgment is rendered, to interfere by summary order to quash or stay the proceedings on the execution. If the injunction is disobeyed, a court of equity has its own mode of administering suitable redress. But a court of law is under no obligations to enforce it as a matter of right or duty. In respect to suits at common law, it is true that the laws of the United States have adopted the forms of writs, executions and other process, and the modes of proceeding authorized and used under the state laws, subject, however, to such alterations and additions as may from time to time be made by the courts of the United States. But writs and exe-

cutions, issuing from the courts of the United States in virtue of these provisions, are not controlled or controllable in their general operation and effect by any collateral regulations and restrictions which the state laws have imposed upon the state courts to govern them in the actual use, suspension or superseding of them. Such regulations and restrictions are exclusively addressed to the state tribunals, and have no efficacy in the courts of the United States unless adopted by them. The case of Palmer v. Allen (7 Cranch, 550, 564) furnishes a commentary on this point; and it is freely expounded and illustrated in the subsequent cases of Wayman v. Southard, 10 Wheat. R. 1, and United States Bank v. Halstead, 10 Wheat. 51. No rule of the circuit court of Maryland has been produced which adopts these state regulations; and the existence of one is not to be assumed.

But if the injunction could be admitted to operate as a supersedeas at law, under any circumstances, in the courts of the United States, there would yet remain a decisive objection against its application in the present case. Nothing is better settled at the common law than the doctrine that a supersedeas, in order to stay proceedings on an execution, must come before there is a levy made under the execution; for if it comes afterwards, the sheriff is at liberty to proceed upon a writ of venditioni exponas to sell the goods. There are many cases in the books to this effect; but they are admirably summed up by Lord Chief Justice Willis, in delivering the opinion of the court in Meriton v. Stevens, Willis's R. 271, 280; to which alone therefore it seems necessary to refer. See Charter v. Pector, Cro. Eliz. 597, Moore's R. 542; Clark v. Withers, 6 Mod. 290, 293, 298; S. C. 1 Salk. 321; Blanchard v. Myers, 9 John. R. 66; 2 Tidd's Pr. 1072; Com. Dig. Execution, C. 5, C. 8; Bac. Abridg. Supersedeas, G. See also M'Cullough v. Guetner, 1 Binn. R. 214.

In the present case, the levy on the fieri facias was made more than a week before the injunction was granted; so that, according to the course of the common law, it ought not to operate as a supersedeas to the venditioni exponas.

In every view of this case it is clear that there is no error in the proceedings, which is revisable by this court. Whatever might have been properly done by the circuit court, upon

the motion to quash, in order to give full effect to its own injunction, was matter exclusively for the consideration of that court in the exercise of its discretion, and is not re-examinable here. And there is no pretence of any error in the judgment or award of the execution under which the levy was made. The judgment of the circuit court is therefore affirmed, with damages at the rate of six-per cent, and costs.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Maryland, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed, with costs and damages at the rate of six per centum per annum.