Peeele, Ch. J.,
delivered the opinion of the court:
The defendants demur to the second amended petition on the ground: First, that the facts averred do not constitute a cause of action against the United States; and, second, that the statute of limitations applies to all claims accruing prior to six years before the filing of the petition.
As to the first ground the demurrer must be overruled, if the claimant is entitled to recover for the amount accruing within six years prior to the filing of the petition, and this is impliedly conceded in the second ground of the demurrer.
The second ground of demurrer is not well taken if the averments of the twenty-first, twenty-second, and twenty-third paragraphs, and particularly the twenty-third paragraph, of the petition are true, and for the purposes of the demurrer they must be taken as true so far as material. The twenty-third paragraph reads:
“ During the whole time of petitioner’s ownership of said two railroads it has been understood between petitioner’s officers and those of the United States that the intention in said withholding of the earnings' of said railroads was *131 merely to make sure of the convenient collection to that extent of said indebtedness to the United States, in case the debts should not be collectible from the State of Tennessee, and that said officers of the United States would, if possible, make collection from said State and then would undertake, with petitioner’s officers, an adjustment and balancing of all accounts between petitioner and the United States. Many efforts were made before 1898, but without success, by officers of the War Department to collect the amounts of said indebtedness from the State of Tennessee; and said joint resolution of Congress of May 12, 1898, as well as said act of March 3, 1871, was enacted through the aid of recommendations made by the Secretary of War and other officers of said department. Said officers of the United States have never disputed, but have always confessed that said record of said claims of the United States, on the one part, and of said earnings of said two railroads, on the other part, was kept and should be kept in the future for the purpose alone of the payment by one party to the other of such balance as should be due when all questions of the indebtedness of petitioner on said claims, or any parts thereof, should have been determined. In this view of said claims of the United States, and because of the pendency of said other matters between petitioner and the United States, they have withheld all efforts to compel petitioner or its said predecessors in title to pay said debts. Petitioner has relied throughout upon said understanding and upon promises of the officers of the United States to bring to a decision said question of the liability of petitioner and its said earnings, and this alone has caused it to withhold heretofore a demand or suit for the amount of said earnings.”
The averments leading up to that paragraph are substantially that during the Civil War (in 1862) the military forces of the United States seized, for military purposes, the Edgefield & Kentucky Railroad Co. and the Memphis, Clarksville & Louisville Railroad Co., both of which roads were organized under the laws of the State of Tennessee; that prior to the Civil War both roads were aided in their construction by bonds of the State, in furtherance of certain internal improvements, in the aggregate sum of $2,762,000, to secure which the act authorizing such internal improvements declared a lien in favor of the State on all properties and franchises of the companies, coupled with the right, in default of the payment of interest on the bonds, to take *132 possession of the roads and operate them until such indebtedness should be paid.
While the roads were in the possession of the military authorities of the United States they bought a number of locomotives and cars and used the same in operating the roads, adding thereto much material and supplies. During the period the roads were operated by the military authorities the companies, in 1865, defaulted in the payment of interest on .the bonds so issued by the State, by reason of which the governor thereof appointed receivers to take possession of and operate the roads, rolling stock, and all other properties.
Thereupon the general manager of military transportation, through the Quartermaster’s Department of the United States Army, by General Order No. 62 of the Secretary of War, October 14, 1865, sold and delivered the locomotives, cars, and the material and supplies on hand which had been theretofore purchased by the military authorities to said receivers at and for the consideration, as inventoried, of $114,772.86 for the Edgefield & Kentucky Eailroad Co., and $337,143.72 for the Memphis, Clarksville & Louisville Eail-road Co., or for both roads the aggregate sum of $451,916.58.
The sales so made were, as provided by the order, upon the condition that the companies purchasing the equipment and other property of the United States pertaining to said railroads should execute their respective bonds for the payment of the purchase money within two years with 7.3 per cent interest per annum, and that in the bonds there should be expressed in favor of the United States, as security for the payment thereof, a lien upon the property sold, together with the right upon default in payment to take possession of said roads and operate them until the debts so secured were fully paid; and, further, it was provided “ that on such indebtedness there should be credited to the railroad company, upon the first day of each month, all sums due it for transportation done for account of the United States during the month next preceding.”
It is further averred that the receivers purchasing said roads did not execute bonds in payment of the purchase money so provided by the order of the War Department on *133 the ground that they did not deem themselves authorized so to do, whereupon the Secretary of War, by negotiation with the governor of Tennessee, arranged for the State itself to be bound for such indebtedness, and to that end the general assembly of said State, by the act of May 24, 1866, ratified the arrangement so made, as follows:
“Section57. That the governor be, and he is hereby, authorized and instructed to execute a bond for the purchase of railroad machinery, cars, and other material, purchased for the use and benefit of the Memphis, Clarksville & Louisville Eailroad and the Edgefield & Kentucky Eailroad from the United States railroad department, at Nashville, of the United States.” (Laws of Tennessee, 1865-66, ch. 88, p. 252.)
Pursuant to this act and upon the basis of the sales theretofore made to the receivers the governor thereafter — June, 1866 — executed two bonds of the State, one for $93,385.09 and one for $21,387.77, for the indebtedness on account of the Edgefield & Kentucky Eailroad Co., and one bond in the sum of $337,993.72 for the payment of the indebtedness on account of the Memphis, Clarksville & Louisville Eail-road Co., amounting in the aggregate to $452,766.58.
In 1871, as averred, a bill was filed in chancery in Davidson County, Tenn., seeking collection of the debts due the State from said roads, among others, in which bill a lien was asserted on all the properties of said roads in favor of the State for the amount of all indebtedness, including the bonds issued to aid in the construction of said roads as well as those issued in payment of the purchases made from the United States by the receivers. It is averred that a decree was entered declaring the rights of the parties as alleged in the bill, and the properties were ordered sold, giving to the respective companies (or to the stockholders thereof, or in case of default any other persons) permission to purchase said properties and franchises at the amount of their indebtedness to the State. Said roads were subsequently, though at different dates, sold free from the liens of the State as averred and were paid for in bonds of the State held by said purchasers, the value of which was fixed in the decree.
It is further alleged that the chancery court did not recognize any liability or impose an}? liability on the purchaser *134 of said roads or the properties themselves for the debts due the United States (not a party thereto), though it is further averred that in the sale of the Memphis, Clarksville & Louisville Eailroad Co. the State was authorized by an act of the general assembly to indemnify the purchaser against all liability for the indebtedness due the United States on account of the sale of said road to the receivers; that prior thereto, through the operation of said roads, the cars, rolling stock, and other properties sold by the United States were consumed and very little, if any, of them was left at the time of the sale under said decree; that by virtue of the sale of said railroads and other properties of both roads under said decree the claimant herein became the owner of all the assets, including the choses in action, of said companies, and the claims against the United States for the transportation theretofore done for them by said roads.
It is further averred that subsequent to the sale of said roads by the military authorities of the United States the Quartermaster General instituted a system of withholding all sums due for transportation on account of the United States and credited the same upon the debts due the United States on' the purchase price of sales, except as to the transportation of mails over the Memphis, Clarksville & Louisville Eailroad Co., which, after 1869, was paid on the opinion of the Attorney General that the United States were not a creditor of said company and not entitled to share in any distribution of its assets, and except also the like transportation over the Edgefield & Kentucky Eailroad Co., which, after 1873, was paid on the opinion of the Judge Advocate General of the Army that the general assembly of the State of Tennessee had not theretofore created any lien in favor the United States upon the earnings of said road.
All other earnings for the transportation of freight and passengers on Government account have been withheld, the accounts for which are kept in the office of the Quarter-riiaster General; that the amount of earnings on said two railroads now unpaid amount to the sum of $84,000, of which $81,000 accrued more than six years prior to the filing of the petition herein.
*135 By the averments of the petition it will be noted that in the bill filed in the chancery proceeding between the State and the railroad companies a lien was asserted in favor of the State on all property of said roads for the amount of all indebtedness due the State from them, including the indebtedness arising on the bonds so issued to the United States in payment of the purchases aforesaid; and that in said proceeding the rights of the parties were decreed a3 averred and said roads ordered sold free from any lien in favor of the State. Hence, whatever lien existed on the roads in favor of the State for the payment of the bonds issued to the United States was as between the parties to said- proceeding divested, and presumably the State in the purchase price of the roads was thereby indemnified for the obligation so assumed in the issuance of its bonds.
However, as no lien was declared in favor of the State or of the United States in the act authorizing the issuance of the bonds in payment of the purchases by the receivers, the rights of the United States were not affected by the proceeding or sale; and from the averments of the petition it is manifest that in lieu of a lien on the property sold the Government, by adjustment through the War Department, accepted the bonds in payment of said purchase money, thereby relieving the roads so sold, and each of them, from any and all liability to the United States for or on account of the property so sold, unless by virtue of the order of the Secretary of War providing “that on such indebtedness there should be credited to the railroad company, upon the first day of each month, all sums due it for transportation done for account of the United States during the month next preceding” the State of Tennessee is entitled in law to look to the United States for such credits in diminution of the debt of said roads, so assumed by it and for the payment of which it issued its bonds.
This view is met, however, by the chancery proceeding referred to, wherein it was decreed that the State had a lien on all property of said roads for the amount due from them to the State, including the bonds issued in payment of the purchases made by said receivers from the United States. *136 The decree ordered said roads sold free from the lien of the State, which was subsequent^ done.
Furthermore, the act of 1866 authorizing the governor to issue the bonds of the State in payment of said debt makes no reference to any lien of the United States or any claim in favor of the State by reason of the earnings of said roads for account of the United States, nor is there any averment in the petition that such, was the understanding between the officers of the Government and said State. On the contrary, it is averred that it was the intention of the Secretary of War and the governor of Tennessee, as well as the general assembly of said State by the passage of said act, “that the bonds to be issued under said act should be the sole security for the payment of said purchase moneys.” Though the State is not a party to this suit we must, for the purposes of the demurrer, accept the aver-ments as true so far as material; but if on the trial on the merits it should be disclosed that the faith of the United States was, by virtue of the order of the Secretary of War, or otherwise pledged to said State to the extent of such monthly credits,' then recovery to that extent, in the absence of any disclaimer, might result for the benefit of said State by way of credits on its bonds so issued to the United States.
Certainly for the better protection of the United States the Secretary of War had authority to do what he did; and if so, then the question of indebtedness for the rolling stock sold became one between the United States and the State of Tennessee. The issuance of bonds by the State to aid in the original construction of the roads, coupled with the liens thereon in its favor for the payment of said bonds, then outstanding, was doubtless the consideration which moved the State, in the protection of its security, to assume the indebtedness of the roads to the United States.
We therefore assume the correctness of the opinions of the then Attorney General and the Judge Advocate General of the Army; that is to say, by the Attorney General that the United States were not a creditor of said roads and were not entitled to share in the distribution of their assets, and by the Judge Advocate General that no lien had been *137 created by the general assembly of Tennessee on the earnings of said roads in favor of the United States.
Following these opinions the accounting officers in 1869 paid over the earnings for mail transportation, for account of the United States, over the Memphis, Clarksville & Louisville Railroad Co.; and in 1873, for like account, the earnings over the Edgefield & Kentucky Railroad Co., and its successor in title, was paid over; but the earnings for the transportation of freight and passengers over said roads were withheld on the assumption that the United States had the right to credit the amounts withheld on the indebtedness to the United States so assumed by the State of Tennessee.
While suits were pending in the United States courts in Tennessee against certain railroad corporations in that State on account of property sold to said corporations by the Government and which were being contested by the corporations, as recited in the act, Congress, upon the recommendation of the Secretary of War, by the act of March 3, 1871 (16 Stat. L., 473), authorized the Secretary of War, with the advice of the Attorney General, “ to compromise, adjust, and settle the same upon such terms as to amount of time and payment as may be just and equitable and best calculated to protect the interests of the Government.” However, from the averments of the petition nothing was accomplished under the act. What became of the suits pending is not disclosed.
Later, by the joint resolution of February 27, 1875 (18 Stat. L., 335), the Secretary of War and the Attorney General were authorized and empowered jointly to adjust and settle the claims of the United States against various roads, including the Edgefield & Kentucky Railroad Co. and the Memphis, Clarksville & Louisville Railroad Co., providing therein that such settlement should be made within one year after the passage of the act, and should not be construed to otherwise delay in the prosecution of said claims; and if not adjusted within the period stated the claims aforesaid should be prosecuted and enforced according to existing obligations. Nothing appears to have been *138 accomplished under this act, though what efforts were put forth to that end do not appear.
Thereafter, by the joint resolution of May 12, 1898 (30 Stat. L., 742), Congress, after reciting the indebtedness due from said State to the United States for certain railroad equipments and materials purchased and various claims therein asserted against the United States in favor of said State, authorized the- Attorney General, the Secretary of the Treasury, and the Secretary of War, through the duly appointed agents of said State, to compromise, adjust, and settle all such claims and to report any balance arising therefrom to the governor of the State and to Congress. From the averments of the petition it appears that no definite action has yet been taken in relation thereto; and for this reason the defendants contend, on the theory that the United States still have claims against the companies involved in the settlement under said joint resolution, that therefore this action is premature.
■The joint resolution (1898), which we assume superseded the prior acts on the same subject, is entitled “ Joint resolution providing for the adjustment of certain claims of the United States against the State of Tennessee, and certain claims of the State of Tennessee against the United States.” The preamble to the resolution recites “that the State of Tennessee is indebted to the United States for railroad equipments and materials purchased for the Memphis, Clarks-ville & Louisville Railroad Co. and the Edgefield & Kentucky Railroad Co. by the receivers of said railroad companies”; and further, that “the State of Tennessee claims against the United States certain abatements and reductions of said indebtedness by reason of excessive valuations of said equipments and materials ” and “ certain set-offs and counterclaims, growing out of the use by the United States Government for military and other purposes, and the deterioration of the property by the use of certain of the Tennessee railroads upon which the said State had an express and prior statutory lien.” No mention is made therein of any claim in favor of the United States against the companies growing out of said purchases or otherwise, nor is there any reference therein to any claim of said companies *139 in favor of the United States or said State growing out of any transportation service by said roads for account of the United States.
It will thus be noted that from the averments of the petition and the acts of Congress the indebtedness for adjustment is between the United States and the State of Tennessee, and therefore the opinions of the Attorney General and the Judge Advocate General of the Army hereinbefore referred to were correct; and, if so, then in the absence of any claim in favor of the State the earnings so withheld from the roads and their respective successors in title were without authority.
Upon this theory of the case, however, the defendants contend that the claim, except as to that portion accruing within six years prior to the filing of the petition, is barred by the statute of limitations.
To meet this contention the claimant by the averments of its petition asserts that during the entire period of the service of said roads there has been a mutual open account between said roads and the United States, and in support of this contention relies particularly upon the averments of the twenty-third paragraph of the petition, heretofore set out in full, in which it is averred that it was understood between the officers of the claimant company and those of the United States that the amount of the earnings aforesaid was withheld to be applied to the payment of the debt due the United States from the State of Tennessee should they not be successful in collecting therefrom, and that upon the collection of said indebtedness from the State of Tennessee the accounts in favor of said railroad companies were to be adjusted and the accounts balanced between the respective parties. Further, it is averred that “said officers of the United States have never disputed, but have always confessed, that said record of said claims of the United States, on the one part, and of said earnings of said two railroads, on the other part, was kept and should be kept in the future for the purpose alone of the payment by one party to the other of such balance as should be due when all questions of the indebtedness of petitioners on said claims, or any parts thereof, should have been determined,” by reason *140 of which, they aver, the United States have withheld all efforts to compel petitioners, or any of said predecessors in title, to pay said debts, and that, relying upon such understanding and upon promises of the United States to bring to a decision the question of the liability of the petitioners and its said earnings, it delayed suit for the amount thereof.
Was there such a mutual open running account between the claimant and its predecessors in title and the United States as to relieve the claims herein from the statute of limitations? The claimant contends that there was, because the United States elected to so treat the account— that is, that they withheld the earnings of the roads to be applied in the reduction of said indebtedness; that such was the mutual understanding of the parties by reason of which, coupled with the various acts referred to looking to the settlement of the indebtedness between the State and the United States, the claimant was lulled into nonaction.
There is much reason in this contention, otherwise the claimant in self-interest would have brought suit in time to protect itself against the defense of the statute of limitations now interposed.
Whether the amounts withheld by the United States should be applied on the indebtedness of the State in favor of the United States or paid directly to the companies is not now material to decide, as the question is, Were the accounts as kept, under the circumstances of this case, sufficient to constitute a mutual open account between the railroads and the Government? For the purposes of the demurrer on the facts averred we must so hold, although in the final hearing it may be held that the United States are not indebted to the railroads for moneys withheld except by way of reduction of the indebtedness of the State of Tennessee to the United States.
A mutual open account is not terminated, as a rule, until a final balance is arrived at, which balance, it has been held, constitutes an independent debt (Gunn v. Gunn, 74 Ga., 755), from the date, of which the statute of limitations begins to run. (Toland v. Sprague, 12 Pot., 300; Sprinq v. Gray, 6 Pet., 656.)
*141 But here the Government, because its officers were in doubt as to the real debtor, so kept the accounts that if upon settlement the roads were found indebted to the United States the amount withheld could be applied thereon.
It is but reasonable to assume that the claimant relied upon this action of the Government, especially as from the aver-ments it appears, as well as from the acts of Congress referred to, that a speedy settlement of the account since 1871 was promised, and therefore in view of said action of the Government and the reliance thereon by the claimant and its predecessors, as averred, the court is of the opinion that the transactions between the claimant and the United States are such as to constitute a mutual open running account, thereby relieving the claims so accrued and withheld from the running of the statute of limitations; and thus believing, the defendants’ demurrer must be and is overruled, which is accordingly ordered.