## WALTER H. W. LAU *v.* CHANG SUE YIN, DOING BUSINESS AS LUM KEE.

### No. 2582.

ARGUED NOVEMBER 3, 1944.       DECIDED DECEMBER 4, 1944.

KEMP, C. J., PETERS AND LE BARON, JJ.

This case is brought before us by writ of error to the circuit court of the first judicial circuit.

A summary possession proceeding was commenced in the district court of Honolulu on February 3, 1944, to recover possession of certain store premises. After judgment an appeal was taken to the circuit court of the first circuit for a trial *de novo*. The case having been set for trial for March 28, 1944, the parties plaintiff and defendant appeared by their respective counsel, whereupon the defendant confessed judgment and requested that the writ of possession be stayed until April 21, 1944. The plaintiff agreed to the request for stay of the writ, whereupon the court ordered judgment as confessed and stay of the issuance of the writ to April 21 as requested. On April 17, 1944, judgment was entered as ordered. Writ of possession, although stayed only to April 21, did not issue until June 21, 1944.

In the meantime the governor of Hawaii, purporting to act under and by virtue of the powers in him vested by the Hawaii Defense Act, Act 24, Special Session Laws of Hawaii 1941, as amended by Acts 5 and 96 of the Session Laws of 1943, on June 9, 1944, issued rule number 105 relating to the use and occupancy of commercial premises to become effective June 11, 1944. On June 24, 1944, the defendant moved to quash the writ on the ground that it did not issue in conformity with rule 105, Hawaii Defense Act. The motion was based on the record and the uncontroverted affidavit of the administrator of commercial real property control.

At the hearing on July 1, 1944, a certified copy of rule 105 was introduced in evidence. The court granted the motion and quashed the writ of possession, and on September 15, 1944, the plaintiff sued out this writ of error, attacking the validity of the order quashing the writ.

The defendant has moved that the writ of error be dismissed, on the ground that it is not issued to correct or reverse a final judgment of a circuit court or an order or decree of a circuit judge at chambers by which the plaintiff in error is aggrieved.

The present statute authorizing the issuance of a writ of error is section 3550, Revised Laws of Hawaii 1935, which provides that a writ of error, returnable to the supreme court, may be issued by the clerk or any deputy clerk or assistant clerk of the supreme court, upon the application of any party deeming himself aggrieved by the judgment of a circuit court, the land court, or a district magistrate, or by the order or decree of a circuit judge at chambers, at any time before execution thereon is fully satisfied, within ninety days from the entry of such judgment, order or decree.

Is the order quashing the writ of possession a judgment within the meaning of the above statute? If it is, the motion to dismiss must be denied; if it is not, the motion must be granted.

As we shall hereafter see, this court has several times held that only final judgment may be the foundation of a writ of error. (*Kaehu* v. *Namealoha*, 20 Haw. 516; *Territory* v. *Cotton Bros.*, 17 Haw. 374; *Ramsey, Ltd.*, v. *City & County*, 29 Haw. 242.) The question for our determination therefore is whether the order quashing the writ of possession, at which this writ of error is aimed, is such a judgment.

The present Hawaii statute authorizing a writ of error stems from section 1157, Civil Code 1859, which section was amended by the Laws of 1892, chapter 95, section 1 (R. L. H. 1905, § 1869), and as amended provided that a writ of error may be had by any party deeming himself aggrieved by the decision of any justice, judge or magistrate, or by the decision of any court, except the supreme

court, or by the verdict of a jury at any time before execution thereon is fully satisfied, within six months from the rendition of judgment.

The above statute was amended in 1919 by chapter 44, section 1, to read as it now reads, except that by Act 37, Session Laws 1931, the time within which the writ may issue was reduced to ninety days.

In *Territory* v. *Cotton Bros., supra,* the court denied the motion of the defendant in error to dismiss the writ of error aimed at an order granting a new trial, where it appeared that the court had no jurisdiction to grant it, holding that since the court had no power to make the order granting a new trial, when it was made, it was a final judgment; that the motion for a new trial in such case was a new proceeding and the order granting a new trial was the final order in that proceeding and therefore reviewable.

In *Kaehu* v. *Namealoha, supra,* the writ of error was aimed at the decision of the circuit court, no formal judgment having been entered. The writ of error was quashed on motion of the defendant in error, the court saying: "The term 'writ of error' must be taken in its common law acceptation, and is to be understood as being a proceeding aimed at final judgment in a case in which error is claimed to have been committed, for the purpose of bringing up the record in order that the error may be rectified. 'On error the final judgment alone is brought up', the specific rulings, whether excepted to or not, are considered only incidentally in passing upon the correctness of the final judgment; the entire record is brought up, and the judgment of the appellate court is such as the facts and law warrant as shown by the entire case.' *Territory* v. *Cotton Bros.,* 17 Haw. 374, 381."

*Ramsey, Ltd.,* v. *City & County, supra,* was a bill for injunction. The respondent's demurrer to the amended

bill was overruled and the case went to trial on the amended bill and answer and resulted in a decree wholly in respondent's favor. The respondent's writ of error, aimed at the order overruling its demurrer, was dismissed. The court relied on the two earlier cases above cited and *Davis & Co.* v. *Illinois Pacific Glass Co.*, 22 Haw. 303. The statute construed in the *Ramsey* case was our present statute. All of the prior cases cited and relied upon construed the statute as it existed prior to the 1919 amendment. As construed the earlier statute confined the right of review by writ of error to a final judgment in the proceeding in which the judgment was entered. In that regard it did not differ from the present statute as construed in the *Ramsey* case.

The opinion in the *Davis & Co.* case, cited and relied upon in the *Ramsey* case, commented upon and differentiated the case of *Territory* v. *Cotton Bros.*, *supra*, as follows: "There is no contention that the circuit judge at chambers was without jurisdiction to make the order, in which event, under the authority of *Territory* v. *Cotton Bros.*, 17 Haw. 374, the order might be deemed a final one for the purpose of review by writ of error. Indeed, it is impliedly conceded that such jurisdiction existed, as counsel for plaintiff, in opposition to the motion to dismiss, argues that the order requiring plaintiff to give security for costs and staying proceedings pending the compliance with the order was an ancillary or interlocutory proceeding before the circuit judge at chambers and that such order is a final determination of such ancillary or collateral proceeding, to review which a writ of error will lie."

We know of no case in this court in which an attempt was made by writ of error to have an order quashing or refusing to quash an execution reviewed. Other courts under quite similar statutes have passed on the question of whether or not an order quashing or refusing to quash

an execution is such a judgment as may be reviewed on writ of error. The authorities are not in accord on this question.

*Boyle* v. *Zacharie*, 31 U. S. 648, is a pioneer case in the United States Supreme Court as to the character of an order quashing or refusing to quash an execution. The following are the relevant facts of that case: Zacharie & Turner were merchants of New Orleans, and Boyle was a shipowner and a resident of Maryland. In 1818 Boyle consigned the brig Fabius to Zacharie & Turner at New Orleans and after they had put the cargo aboard and the brig was ready to sail, she was attached as the property of Boyle for a debt due by him to the plaintiffs in the attachment. To enable the brig to proceed on its journey, Zacharie & Turner became surety for Boyle to procure the release of the brig. In December of 1819 Boyle made application in the courts of Maryland for the benefit of the Insolvent Act of that State and eventually obtained his discharge. In 1821 Zacharie & Turner, having paid the debt of Boyle for which they became surety, sued Boyle in the United States Court in the District of Maryland and Boyle confessed judgment for the amount paid by Zacharie & Turner to procure the release of the brig, the judgment to be "subject to the legal operation of the defendant's discharge under the insolvent laws of Maryland." The judgment having remained unexecuted for more than a year, it was revived by *scire facias* and writs of *fieri facias* were issued and renewed from time to time until 1827, when a *fieri facias* was delivered to the marshal who levied it on the ship General Smith, belonging to Boyle. Boyle then filed a bill in equity to enjoin the further proceedings under the *fieri facias* and procured a temporary injunction. The marshal in whose hands the *fieri facias* was placed made a return showing that he levied the *fieri facias* as per schedule but had been served

with an injunction preventing a sale. After a hearing the temporary injunction was dissolved and Boyle appealed to the Supreme Court of the United States. Pending that appeal a writ of *venditioni exponas* was issued for the sale of the ship upon which the *fieri facias* had been levied. Boyle then made a motion in the court in which the judgment above described had been entered against him to quash the writ of *venditioni exponas*, setting up as the ground therefor the proceedings which we have already described and alleging that he had been required to execute an injunction bond or obligation before the temporary writ of injunction issued. His motion to quash was denied and the cause was removed to the Supreme Court by writ of error.

Being confronted with the contention that a writ of error does not lie to review the order refusing to quash the *venditioni exponas*, Mr. Justice Story speaking for the court said in part (p. 656) : "We consider all motions of this sort, to quash executions, as addressed to the sound discretion of the court; and as a summary relief, which the court is not compellable to allow. The party is deprived of no right by the refusal; and he is, at full liberty to redress his grievance by writ of error, or *audita querela*, or other remedy known to the common law. The refusal to quash is not, in the sense of the common law, a judgment; much less is it a final judgment. It is a mere interlocutory order. Even at the common law, error only lies from a final judgment; and by the express provisions of the judiciary act of 1786, ch. 20, § 22, a writ of error lies to this court only in cases of final judgments."

The movant relies primarily on *McCargo* v. *Chapman*, 61 U. S. 555, which cited *Boyle* v. *Zacharie, supra*, and *Loeber* v. *Schroeder*, 149 U. S. 580. In the *McCargo* case an *alias fi. fa.* was quashed and a writ of error, which intended to bring before the Supreme Court the question

whether the motion to quash the execution was properly sustained, was dismisséd. The ground of the motion was that the alias execution issued more than seven years after the prior execution was issued and more than seven years after it was returned no property found. Mr. Justice McLean, speaking for the court, after reviewing the authorities *pro* and *con*, said:

"Whatever discrepancies may be found in decisions on this subject, we think a writ of error will not lie on any judgment, under the act of 1789, which is not final, in whatever form it shall be given. This may be illustrated by the case before us. In this case, the Circuit Court quashed the execution; and, by a writ of error, we are called on to revise that decision. What will be the effect of an affirmance? May not the Circuit Court issue another execution on the same judgment? In short, is the action of the Circuit Court final as to anything except the particular motion before it? May it not be followed by another motion of the same import? If the writ of error may be allowed to one party, it cannot be denied to the other. And to what motions shall it be limited?

"It has uniformly been held that error will not lie, without a statutory provision, on a motion for a new trial, to amend the pleadings, or any other motion which depends upon the discretion of the court.

"If in the language of this court in Boyle *v.* Zacharie, an execution should be issued not authorized by the judgment, the court, on motion, would set it aside or quash it; and should it refuse to do so, a mandamus would seem to be the proper remedy. It is a writ which may be issued to inferior courts and magistrates, to require them to execute that justice which the party is entitled to, and which, by law, they are enjoined to do, and where there is no other remedy." The foregoing opinion has been cited with approval many times. However, the sugges-

tion of mandamus as the proper remedy was disapproved in *Cromwell* v. *County of Sac*, 94 U. S. 351.

In *Loeber* v. *Schroeder, supra,* the motion to quash the execution attacked .the validity of the judgment on which it issued. The motion was denied and the movant brought error. On the authority of *McCargo* v. *Chapman, supra,* and several other cases, a motion to dismiss the writ of error was sustained on the ground that a writ of error will not lie except to review a final judgment or decree and that an order overruling a motion to quash an execution is not such a final judgment or decree as is contemplated by the Judiciary Act.

The federal courts have uniformly followed the foregoing cases of the United States Supreme Court in holding that an order quashing or refusing to quash an execution is not appealable or subject to a writ of error. The latest federal case adhering to that holding coming to our attention is *Glinski* v. *United States*, 93 F. (2d) 418.

It is apparent, however, from the language of the court in the *Boyle* and *McCargo* cases heretofore quoted and the disposition of the equity proceeding that stemmed from the former (reported in 31 U.S. 632), that the federal courts attribute only their common-law attributes to motions to quash executions. Where the motion to quash is based on defects in the writ itself or in its form, the federal courts, in the exercise of a sound discretion, will hear or refuse to hear the matter on motion. Where the motion to quash is based on controversial facts and asks relief against an unauthorized or oppressive execution, the federal courts will not determine the matter on motion but will relegate complaining parties to the equitable remedies of *audita querela* or injunction.

The language heretofore quoted from the *Boyle* case, if corrected by the substitution of the words "writ of injunction" for the words "writ of error," which is obviously

a mistake, renders all the federal cases upon the subject consistent.

While the federal courts have uniformly adhered to the original estimate of the qualities of a motion to quash executions, indicated by the *Boyle* and *McCargo* cases, the several States have almost uniformly enlarged the scope of the. motion to quash, either under express statutory enactments or the inherent power of courts to control their own processes, to include those grounds which could only be presented by injunction or *audita querela* under the federal decisions. This, with the limitations hereinafter indicated, has been the practice in Hawaii. It has been our observation that in this jurisdiction, upon motions to quash executions, it has been the practice of courts of record to consider objections attacking the propriety of the issuance of the writ involving pure questions of law presented by the record or based on extrinsic facts, the truth of which were not in controversy.

The rules applicable to the right of appeal from an order or decision made after judgment or decree are discussed in the following quotations from Corpus Juris Secundum. The thesis of the discussion is supported by many state cases.

In 4 Corpus Juris Secundum, Appeal and Error, section 130, page 259, it is said: "In the absence of a statute to the contrary, decisions made in a cause after a judgment or decree therein are not appealable or subject to a writ of error unless they come within the definition of a final judgment, order, or decree, or are in the nature thereof, and the error complained of originates therein, or unless such subsequent decision was beyond the power of the court, and in some jurisdictions it is expressly provided that judicial proceedings subsequent to final judgment may be reviewed only in connection with a review of the latter.

"It has been held, however, that orders upon matters

arising after judgment are not governed by the same rules as are applicable to appeals from orders rendered prior to final judgment. So as a general rule, even in the absence of special statutory provisions, an appeal may be taken upon matters arising after a final appealable judgment or decree which require the judicial action of the court in relation to the rights litigated in the main suit making necessary a substantive and important order or decree, when such order or decree partakes of the nature of a final decision of those rights; but the appeal must be prosecuted on some new and distinct ground not covered by the original judgment or decree, and error will not lie to an order made in a proceeding not distinct in itself from the original or main case or action. It has been held that on such an appeal only matters arising subsequent to the final judgment or decree can be reviewed.

"An appeal will not lie where the action of the court is in the exercise of a mere ministerial duty, or is discretionary; nor, as a rule, where it is merely in execution of the final judgment or decree previously rendered, unless the question is whether the judgment or decree had already been carried out, or unless the errors complained of originated in the subsequent judgment, order, or decree. When the decree appealed from is dependent upon the decree to execute which it was rendered, it is vacated by the reversal of such prior decree, and in such case the appeal which brings it into review will be dismissed for want of a subject matter on which to operate."

In 4 Corpus Juris Secundum, Appeal and Error, section 135, page 275, it is said that although there are authorities to the contrary the general rule is that appeal or error, according to the practice, will lie from or to a judgment, order or decree awarding or refusing to award an execution on a judgment or decree, quashing or setting aside or refusing to quash or set aside an execution or levy thereon,

or finally disposing of a motion for a stay of execution, or staying an execution for an indefinite period of time.

The finality of an order quashing an execution depends on the grounds of the motion to quash.

Freeman, on Executions (3d ed.), volume 1, section 73a, classifies the grounds for quashing executions. He says, in effect, that executions may be quashed (1) when no writ could properly issue at the time of the issuance of the writ in question; and (2) although a writ of execution could properly issue, the one sought to be vacated was issued without authority or by some person not authorized to issue it, or is irregular in form, or not warranted by the judgment on which it is based, or, although warranted when issued, some fact subsequently occurring has made its enforcement improper. He further says that the cases of the first class may in turn be classified as including (1) writs issued upon void judgments; (2) writs issued upon judgments which have been satisfied or otherwise rendered inoperative; and (3) writs issued on valid judgments but at a time when the right to execution had not accrued or had been suspended by operation of law, by an order of court, or by the agreement of the parties. In section 77 of the same treatise it is said that some of the grounds for quashing executions are of a substantial character and some of them, if maintained, extend beyond the vacating of the writ in question and show that no further writ should ever be issued. Thus, if it is claimed that the writ assailed issued when the court no longer had any authority to enforce the judgment, the sustaining of the motion is in effect an adjudication that no writ can ever issue. If the ground of a motion to quash or to recall a writ is that the judgment had been satisfied or that the defendant had been relieved by his discharge in bankruptcy or an insolvency proceeding and that the facts are conceded or established by record evidence, the court will proceed, but

if substantial issue of fact is presented, the court ought not determine such issue upon motion but should leave the parties at liberty to try it in some appropriate suit.

The facts, upon which the motion to quash the writ of possession in this case are predicated, are conceded and the order quashing the writ extends beyond the vacating of the writ in question and prohibits the issuance of any further writ, at least so long as rule 105 issued by the governor of Hawaii is in force, which rule, if not sooner revoked, will expire with the expiration of the Hawaii Defense Act, which by its terms shall cease to be in effect six months after the governor shall have proclaimed determination of the defense period which commenced December 7, 1941, or six months after the President shall have proclaimed determination of the present war, whichever is the earlier. The order which we are asked to review on this writ of error is therefore an adjudication of the right of the plaintiff in error to have a writ of possession and extends beyond the vacating of the writ in question. It seems clear that if the plaintiff in error is not permitted to have the correctness of the order quashing his writ finally determined and should apply to the court below for another writ of possession, he would be confronted by a plea of *res judicata* of his right in that regard. The order quashing the writ is therefore a final determination of the right of the plaintiff in error to have his judgment enforced so long as the Hawaii Defense Act remains in force.

If the movant had instituted injunction or other appropriate independent proceedings to prevent execution of the writ of possession, the judgment or decree of the court in such proceeding would clearly support an appeal by writ of error. A motion to quash an execution is now recognized as an appropriate alternate proceeding when the facts, as here, are conceded or established by record

34

evidence. That being true, we see no distinction as to finality between an order sustaining a motion to quash and a judgment or decree in an appropriate independent proceeding.

Both reason and authority impel us to the conclusion that the order quashing the writ of possession which we are asked to review in this case is in the nature of a final adjudication of the plaintiff's right to have his judgment executed.

For the reasons assigned, the motion to dismiss the writ of error is denied.

*M. D. White* for the motion.

*F. Schnack, contra,* argued and filed a memorandum.